IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE MANITOWOC COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 14-cv-9271 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| MICHAEL J. KACHMER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Manitowoc Company, Inc. ("Manitowoc") has sued Defendant Michael J. Kachmer ("Kachmer"), one of its former executives, for breach of contract. According to Manitowoc, Kachmer breached his severance agreement with Manitowoc by violating a non-solicitation clause contained in the agreement. The Complaint also alleges that Kachmer breached a subsequent agreement governing the repayment of certain payments made under the severance agreement. Kachmer now seeks to dismiss the breach of contract count as to the severance agreement (Count I), arguing that the non-solicitation clause and the stipulated damages clause contained in the contract are unenforceable under Wisconsin law. For the reasons stated herein, the Court denies Kachmer's motion.

## I. Facts[1]

Kachmer started working at Manitowoc starting in March 2007 and was terminated on April 3, 2013. At the time, he was the Senior Vice President of Manitowoc and President of a division of Manitowoc, Manitowoc FSG Operations, LLC ("FSG"). *See* Compl. ¶¶ 9–11. After

---

[1] When reviewing a defendant's motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in a plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

his termination, Kachmer and Manitowoc entered into a severance agreement. *See id.* ¶ 12; *see also id.*, Ex. A (Severance Agreement).

Paragraph No. 2 and Paragraph No. 3 of the Severance Agreement granted Kachmer certain benefits upon leaving Manitowoc. In particular, Paragraph No. 2 stated that Kachmer would receive $485,000.00 in biweekly payments of $18,653.85 until he obtained new employment. *See id.* ¶ 16. Once he got a new job, the biweekly payments would be reduced proportionally by the amount of pay he received in his new position for the duration of a twenty-six week severance period. *See id.* Paragraph No. 2 also entitled Kachmer to a lump sum payment for unearned vacation in 2013, and outplacement services for twelve months after termination. *See id.* Paragraph No. 3 provided further post-employment compensation that included restricted stock units and equity compensation vesting credits and benefits. *See id.* ¶ 17.

In exchange for this post-employment compensation, Kachmer agreed to be bound by a number of restrictions. Important here are the restrictions contained in Paragraph No. 8(c) of the Severance Agreement. *See id.* ¶ 13. Under Paragraph 8(c), Kachmer agreed that:

> [F]or a period of two (2) years following the Termination Date, [Kachmer] will not interfere with or attempt to impair the relationship between the Company and any of its employees by attempting, directly or indirectly, to solicit, entice, or otherwise induce any employee to terminate his/her association with the Company to accept employment with any entity with which [Kachmer] is an employee, officer, agent, independent contractor, consultant, and/or representative (the "Entity"). For purposes of this subparagraph, Entity shall include any affiliates of the Entity.

*See id.* ¶ 14 (alterations in Complaint). Paragraph 8(c) further defines "soliciting" as:

> (i)[I]nitiating communications with an employee of the Company relating to possible employment with the Entity; (ii) offering bonuses or additional compensation to encourage employees of the Company to terminate their employment to accept employment with the Entity; (iii) referring employees of the Company to personnel or agents employed or engaged by the Entity; or (iv) referring personnel or agents employed or engaged by the Entity to employees of the Company.

*See id.* ¶ 15 (alterations in Complaint).

The Severance Agreement conditioned Kachmer's receipt of the benefits and payments outline in Paragraph Nos. 2 and 3 on Kachmer's compliance with all of the Agreement's terms. *See id.* ¶ 18. The Severance Agreement further outlined that any breach of its terms would constitute irreparable injury and grounds for Manitowoc to seek injunctive or monetary relief. *See id.* ¶¶ 19–20. The repercussions of any breach are outlined in Paragraph No. 9:

> Employee acknowledges that an irreparable injury will result to the Company and its business in the event of a breach of any of the covenants or obligations of Employee contained in this Agreement. Employee also acknowledges and agrees that the damages or injuries which the Company may sustain as a result of such a breach are difficult to ascertain and money damages alone would not be an adequate remedy to the Company. Employee therefore agrees that if a controversy arises concerning the rights or obligations of a party under this Agreement or Employee breaches any of the covenants or obligations contained in this Agreement, the Company shall be entitled to any injunctive, or other, relief necessary to enforce, prevent or restrain any violation of the provisions of this Agreement (without posting a bond or other security). Such relief, however, shall be cumulative and non-exclusive and shall be in addition to any other right or remedy to which the Company may be entitled. Employee also agrees that any breach by Employee of Employee's obligations enumerated in this Agreement shall entitle the Company to the return of any severance payment or any other benefit paid, or received by Employee, hereunder, and reimbursement of any and all attorneys fees incurred in enforcing this Agreement or taking action against Employee for breach of this Agreement.

*See id.* ¶ 20.

For its part, Manitowoc alleges that it fulfilled its end of the bargain under the Severance Agreement. Manitowoc started to pay Kachmer his severance pay starting on April 13, 2013. *See id.* ¶ 21. Manitowoc paid Kachmer $442,096.25 in severance pay until March 10, 2014, when Kachmer obtained new employment with Fischbein, LLC ("Fischbein"), a company headquartered in North Carolina. *See id.* ¶¶ 22–23. Kachmer informed Manitowoc of his new employment, and consequently the proportional scale-down of the severance payments was initiated under the terms of the Agreement. *See id.* ¶ 24.

At this point, however, Kachmer asked that, rather than reduce the severance payments in as provided in the Agreement, Manitowoc continue paying the full amount of the severance

payments through the entire twenty-six week severance period. Kachmer promised that, after the severance period, he would reimburse Manitowoc for the amount it paid him in excess of the proportional scale-down amount. *See id.* ¶ 25. As a result of these discussions, on March 10, 2014, Manitowoc and Kachmer came to a Repayment Agreement memorializing their new arrangement. *See id.* ¶ 26. Pursuant to the Repayment Agreement, Manitowoc paid Kachmer an additional $42,903.85. *See id.* ¶ 27.

Manitowoc complied with the remaining provisions of the Severance Agreement. It paid Kachmer $27,980.77 in unearned vacation pay from 2013; it provided Kachmer $20,000.00 of outplacement services; and it transferred approximately $4,414,148.62 worth of stock options to Kachmer. *See id.* ¶¶ 28–30. These extra benefits caused Manitowoc to incur an additional $79,035.51 in employment and payroll taxes that it would not have incurred but for the extra benefits that Manitowoc extended to Kachmer. *See id.* ¶ 31.

In contrast, Manitowoc asserts that Kachmer did not adhere to his obligations under the Severance Agreement. Specifically, Manitowoc alleges that Kachmer violated Paragraph No. 8(c) of the Severance Agreement by interfering and impairing the relationship between Manitowoc and its employees, by directly and indirectly soliciting Manitowoc employees to leave Manitowoc and join Fischbein. *See id.* ¶¶ 32– 33. In particular, Manitowoc alleges that Kachmer induced two employees, Craig Reuther and Chris Brisch, to leave Manitowoc and accept employment with Fischbein. *See id.* ¶¶ 34–35. Manitowoc also believes that Kachmer has continued to attempt to poach employees from Manitowoc for Fischbein's benefit. *See id.* ¶ 36. Lastly, Kachmer never reimbursed Manitowoc for the $42,903.85 that he had agreed to repay to Manitowoc under the Repayment Agreement. *See id.* ¶ 37.

Based on these allegations, Manitowoc has brought breach of contract claims based on the Severance Agreement and the Repayment Agreement. *See id.* ¶¶ 39–52.

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## III. Analysis

### A. Paragraph No. 8(c) and Determination at the Pleadings Stage

Kachmer moves to dismiss Count I of the Complaint by arguing that Paragraph No. 8(c), the non-solicitation clause, is unenforceable under Wisconsin law. As an initial matter, Manitowoc argues that addressing whether this section of the Severance Agreement is enforceable — and thus, "reasonable"—presents a question of fact that is improper for the Court to consider at the pleadings stage. Manitowoc cites *Fields Foundation v. Christensen*, 309 N.W.2d 125 (Wis. Ct. App. 1981), *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 304 N.W.2d 752 (Wis. 1981), and *Lakeside Oil v. Slutsky*, 98 N.W.2d 415 (Wis. 1959), in support of its position. By contrast, Kachmer notes that "[d]etermining whether no-hire provisions are enforceable is a question of law," *Heyde Co., Inc. v. Dove Healthcare, LLC*, 654 N.W.2d 830, 833 (Wis. 2002), and argues that here that determination can be made without the development of a factual record, citing *Share Corp. v. Momar Inc.*, No. 10-CV-109, 2011 WL 284273, at *4

5

(E.D. Wis. Jan. 26, 2011) (discussing *Rollins Burdick*), and *Sysco Food Services of Eastern Wisconsin, LLC v. Ziccarelli*, 445 F. Supp. 2d 1039, 1041 (E.D. Wis. 2006), as exemplars.

Ruling on the enforceability of the non-solicitation clause is premature at the pleadings stage. Under Wisconsin law, deciding whether a restrictive covenant is unreasonable usually requires "additional facts" because "'what is reasonable varies from case to case' and the question is 'one which can be made only upon a consideration of factual matters.'" *Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 990 (W.D. Wis. 2010) (quoting *Rollins Burdick*, 304 N.W.2d at 756). Of course, occasionally Wisconsin courts have departed from this general principle. But Wisconsin courts have done so only where the restrictive covenant at issue lacked any time limitations whatsoever and, therefore, was deemed *per se* unreasonable under Wisconsin law. *See, e.g., id.* at 989–99 (noting that "[t]he Wisconsin Supreme Court has indicated that the lack of any time limitation renders a restrictive covenant unreasonable per se" and observing that in cases which deferred adjudication of this issue to summary judgment or trial there was at least some time limitation written into the covenant at issue) (citing *Gary Van Zeeland Talent, Inc. v. Sandas*, 267 N.W.2d 242, 250 (Wis. 1978); *cf. Share Corp.*, 2011 WL 284273, at *3 (covenant at issue was per se unreasonable because it lacked a time limitation and therefore dismissal at the pleadings stage was appropriate).

Indeed, the cases cited by Kachmer support this reading of Wisconsin law. In *Share Corp.*, the court "recognize[d] that development of the record may be necessary in some cases to determine the reasonableness of a restrictive covenant" but that "any non-compete provision that fails to incorporate a time limitation, with limited exceptions, should be deemed unreasonable and, therefore, unenforceable . . . . *No further development of the record is necessary in such cases* and dismissal on the pleadings is appropriate." *Share Corp.*, 2011 WL 284273, at *3

(emphasis added). As for the non-solicitation clause, *Share* noted that, on one perspective, what "the clause prohibits is a former employee's enticement of a current [plaintiff company's] employee to work for a new employer," but on another perspective, the "provision could be viewed as hindering employment opportunities and hiring[,]" and in light of this, "[t]he question of the reasonableness of the employee non-solicitation clause would likely benefit from further development of the record." *Share*, 2011 WL 284273, at *5. Similarly, in *Sysco*, the court noted that the procedural posture, in which it was simultaneously adjudicating a motion to dismiss and a motion for preliminary injunction, meant it had the benefits of an additional factual record, including the parties' affidavits. *See Sysco*, 445 F. Supp. 2d at 1047.

The substantive arguments advanced by Kachmer also reinforce the need for fact discovery in this case. Wisconsin courts apply a five-factor test to determine whether a restrictive covenant is enforceable. "A restrictive covenant must: (1) be necessary to protect the employer; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy." *Heyde Co., Inc.*, 654 N.W.2d at 835. Here, Kachmer argues that he posed no threat to Manitowoc with respect to employees he never worked with; that he did not have special knowledge with regard to different divisions of Manitowoc, making a broad non-solicitation provision necessary; and that the current geographic presence of Manitowoc's office arrangement makes the provision geographically overbroad. *See* Def.'s Mot. Dismiss 7–10. Each of these argument begs for factual context.

Kachmer also points out that Paragraph No. 8(c) contains no *territorial* restriction, but he himself concedes that this is not *per se* unreasonable under Wisconsin law. *See* Def.'s Reply 4.

Indeed, "Wisconsin courts have recognized that if the restrictive covenant is otherwise narrowly tailored, the lack of a geographic limitation might be excused." *Sysco*, 445 F. Supp. 2d at 1048.

Because "the ultimate issue of the reasonableness of the agreements turns upon the totality of the facts and circumstances surrounding them, the parties must be given a full opportunity to develop the necessary evidentiary record." *Rollins Burdick*, 304 N.W.2d at 757. Consequently, Kachmer's motion to dismiss Count I based on the unenforceability of Paragraph No. 8(c) is denied.

## B.  Paragraph No. 9 and Determination at the Pleadings Stage

Kachmer also argues that Paragraph No. 9, the damages provision in the Severance Agreement, is unenforceable under Wisconsin law because it constitutes a stipulated damages provision that is penal rather than compensatory.[2] Manitowoc again argues that this question is inappropriate for determination at the pleadings stage.

Under Wisconsin law, "[l]iquidated damages clauses are a subset of stipulated damages clauses .... A liquidated damages clause is the type of stipulated damages clause that a court holds to be reasonable and will enforce." *Equity Enter., Inc. v. Milosch*, 633 N.W.2d 662, 671 (Wis. App. Ct. 2001). "Penalty clauses are also a subset of stipulated damages clauses and are the type of stipulated damages that a court holds to be unreasonable and unenforceable." *Id.* "[I]n deciding whether a stipulated damages clause is valid .... [t]he overall single test of validity is whether the clause is reasonable under the totality of circumstances." *Wassenaar v. Panos*, 331 N.W.2d 357, 361 (Wis. 1983). "[S]everal factors . . . help determine whether a

---

[2]      Kachmer also argues perfunctorily in a footnote that Manitowoc has failed to state a claim under Rule 12(b)(6) because it fails to allege that Kachmer himself solicited Reuther and Brisch to leave Manitowoc and join Fischbein. *See* Def.'s Mot. Dismiss 15, n.5. The Court declines to address this argument because it was made in a footnote and remains undeveloped. *See, e.g., Bakalis v. Golembeski*, 35 F.3d 318, 326 n.8 (7th Cir. 1994) (rejecting an "argument . . . made only in a footnote in the opening brief and . . . not developed fully until the reply brief.")

8

particular clause is reasonable: (1) Did the parties intend to provide for damages or for a penalty? (2) Is the injury caused by the breach one that is difficult or incapable of accurate estimation at the time of contract? and (3) Are the stipulated damages a reasonable forecast of the harm caused by the breach?" *Id.* at 362–63.

The first *Wassenaar* factor is of limited importance. *See Equity Enter., Inc.*, 633 N.W.2d at 672 ("In determining whether a particular clause is reasonable, the first factor—whether the parties intend to provide for damages or for a penalty—is only slightly helpful because the subjective intent of the parties has little bearing on whether the clause is objectively reasonable.").

Wisconsin courts focus their attention on the second and third *Wassenaar* factors. "The second factor, sometimes referred to as the 'difficulty of ascertainment' test, is generally viewed as helpful in assessing the reasonableness of the clause." *Wassenaar*, 331 N.W.2d at 363. "In other words, this factor directs that where damages are inherently difficult to determine, greater latitude will be afforded the parties in setting the amount of a stipulated damages clause." *Koenings v. Joseph Schlitz Brewing Co.*, 377 N.W.2d 593, 600 (Wis. 1985). "The third factor concerns whether the stipulated damages provision is a reasonable forecast of compensatory damages." *Wassenaar*, 331 N.W.2d at 364. "If the damages provided for in the contract are grossly disproportionate to the actual harm sustained, the courts usually conclude that the parties' original expectations were unreasonable." *Id.*

Furthermore, "[i]nquiry into the validity or invalidity of a stipulated damages clause does not necessarily end with a consideration of the three *Wassenaar* factors." *Koenings*, 377 N.W.2d at 603. "A trial court must consider the totality of circumstances giving rise to the stipulated damages clause." *Id.* "Additionally, the trial court should consider the policies that gave rise to

the adoption of the reasonableness test as the test for distinguishing between enforceable liquidated damages provisions and unenforceable penalty provisions." *Id.* (internal quotation omitted).

Kachmer correctly notes that consideration of these factors to determine the validity of a stipulated damages provision is a question of law in Wisconsin. *See Equity Enter., Inc.* 633 N.W.2d 662 at 672; *Koenings,* 377 N.W.2d at 598. But this does not necessarily make the validity of a stipulated damages provision an appropriate inquiry for the pleadings stage.[3] Like the determination of the reasonableness of the non-solicitation clause in Paragraph No. 8(c), under Wisconsin case law, the validity of the stipulated damages clause in Paragraph No. 9 is a fact-dependent inquiry that turns, at least partially, on context that will be revealed through discovery. Indeed, the Court is mindful that "the reasonableness of a stipulated damages clause cannot be determined by a mechanical application of [the] three [*Wassenaar*] factors." *Equity Enter., Inc.*, 633 N.W.2d at 672.

Again, this is not to say that reasonableness can never be appropriate at the pleadings stage, but Kachmer does not make any argument or point to any authority suggesting that Wisconsin courts would hold Paragraph No. 9 to be *per se* unreasonable. This is not surprising given the Wisconsin Supreme Court's admonition that a trial court must consider "the total realm of circumstances which give rise to the validity or invalidity of such a clause." *Koenings,* 377

---

[3] Indeed, the cases cited by Kachmer for this very proposition were determined after discovery. *Equity Enterprises, Inc.* involved a review of the trial court's grant of a motion for summary judgment. 633 N.W.2d at 665. And *Koenings* involved adjudication of a post-trial reduction in a jury award in which the court relied on "evidence at trial" in its analysis. 377 N.W.2d at 600.

N.W.2d at 600. Accordingly, the reasonableness of Paragraph No. 9 cannot be determined

without discovery, and the Court denies Kachmer's motion to dismiss.[4]

## IV. Conclusion

For the reasons stated herein, Defendant's motion to dismiss [15] is denied.

**SO ORDERED**                              **ENTERED**

John Z. Lee
**United States District Judge**

---

[4] Even if the Court were to determine that Paragraph No. 9 were an unenforceable penal damages clause, Manitowoc can still recover damages in contract. This is because "a liquidated damages clause is not a restraint against competition and [] the unenforceability of the clause does not affect the balance of the covenant." *Fields Found., Ltd.*, 309 N.W.2d at 131. Consequently, "[t]he unenforceability of a liquidated damages clause does not affect the damages recoverable for breach of the contract in which it appears." *Id.* at 132.