## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

THE MANITOWOC COMPANY, INC.,

        Plaintiff,

    v.

MICHAEL J. KACHMER,
CRAIG REUTHER, and
CHRISTOPHER BRISCH

        Defendants.

Case No.: 1:14-cv-09271

Honorable John Z. Lee

## CONSOLIDATED COMPLAINT

Plaintiff, The Manitowoc Company, Inc. ("Manitowoc" or "the Company"), by and through its undersigned counsel, states the following for its Consolidated Complaint against Defendants, Michael J. Kachmer ("Kachmer"), Craig Reuther ("Reuther"), and Christopher Brisch ("Brisch") (collectively, "Defendants"):

## <u>INTRODUCTION</u>

1.    Manitowoc seeks injunctive, monetary, and other relief from this Court stemming from Defendants' respective breaches of the post-employment, non-solicitation and/or non-disclosure obligations contained in the various agreements into which they entered with Manitowoc. As set forth with more particularity below, Defendants' contractual breaches have contributed to Manitowoc losing at least two (2) employees and incurring costs associated with those losses, to the detriment of Manitowoc. Additionally, Defendants' contractual breaches have contributed to the disclosure and loss of Manitowoc's valuable confidential and/or proprietary information and documents, to the detriment of Manitowoc. Finally, Defendants' contractual

breaches have deprived Manitowoc of the benefit of its bargain contained in its respective agreements with Defendants, despite the Company having fulfilled all its obligations under said agreements and/or having provided all requisite consideration to Defendants, which resulted in significant financial and non-monetary losses to Manitowoc.

2.      Manitowoc also seeks injunctive, monetary, and other relief from this Court stemming from Defendants' common law misappropriation of Manitowoc's confidential and/or proprietary information. As set forth with more particularity below, Defendants' misappropriation has contributed to Manitowoc losing valuable confidential and/or proprietary information, to the detriment of the Company, and incurring both financial and non-monetary harm.

3.      Manitowoc also seeks injunctive, monetary, and other relief from this Court stemming from Defendants' breaches of their fiduciary duties of loyalty, good faith, and fair dealing to Manitowoc. As set forth with more particularly below, Defendants' breaches of their fiduciary duties to Manitowoc has contributed to Manitowoc incurring financial and non-monetary harm stemming from Defendants' willful, wanton, and malicious actions of recruiting Manitowoc's valuable employees and using Manitowoc's confidential and/or proprietary information prior to and/or after Defendants' respective departures from the Company.

4.      Manitowoc also seeks injunctive, monetary, and other relief from this Court stemming from the unjust benefit Defendants received, and corresponding detriment Manitowoc experienced, because of Defendants' spectrum of wrongful conduct. As set forth with more particularity below, Defendants' wrongful conduct and the unjust benefits they received therefrom have contributed to Manitowoc losing valuable confidential and/or proprietary

information and employees, and incurring a financial and non-monetary detriment and/or harm as a result of the benefit Defendants received.

5.      Finally, Manitowoc seeks injunctive, monetary, and other relief from this Court stemming from Defendants' tortious interference with various Manitowoc employees' contracts with the Company. As set forth with more particularity below, Defendants' tortious interference with Manitowoc's employees' contracts has contributed to Manitowoc incurring financial and non-monetary harm stemming from Defendants' intentional and unjustified inducement of said employees to breach their contracts, and the corresponding loss of Manitowoc's confidential and/or proprietary information misappropriated during the course of said breaches.

6.      Manitowoc brings this action to recover damages it has already suffered stemming from Defendants' wrongful conduct, as well as to obtain injunctive relief to prevent them from causing further injury.

## PARTIES, JURISDICTION, AND VENUE

7.      Plaintiff, The Manitowoc Company, Inc., was and is a Wisconsin corporation, having its headquarters and principal place of business in Manitowoc County, Wisconsin, at 2400 South 44th Street, Manitowoc, Wisconsin 54221. Manitowoc is the holder of a certificate of authority to transact business in the State of Illinois.

8.      Manitowoc is comprised of numerous divisions, including Manitowoc FSG Operations, LLC ("FSG"). FSG is comprised of the world's leading brands in food equipment, and manufactures, sells, supports, and services food equipment around the world.

9.      Defendant, Michael J. Kachmer, is an adult male resident and citizen of the State of Illinois who, upon information and belief, resides in DuPage County, Illinois, at 14 Marywood Trail, Wheaton, Illinois 60187.

10.     Defendant, Craig Reuther, is an adult male resident and citizen of the State of Illinois who, upon information and belief, resides in DuPage County, Illinois, in the City of Glen Ellyn.

11.     Defendant, Christopher Brisch, is an adult male resident and citizen of the State of Florida who, upon information and belief, resides in Pasco County, Florida, at 8403 Creedmoor Lane, New Port Richey, Florida 34654. Brisch is in the process of transferring his residency and citizenship to the State of Illinois and, pursuant to a joint motion with Manitowoc, requested transfer of this action, commenced in Florida, to Illinois, which was granted.

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States, as set forth in Paragraph Nos. 9, 10, and 11 *supra*.

13.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1), because Defendants reside in DuPage County, Illinois, which is located in the Northern District of Illinois, and/or have consented to venue in the Northern District of Illinois, as set forth in Paragraph Nos. 9, 10, and 11, *supra*.

## **FACTS – KACHMER**

### **KACHMER'S EMPLOYMENT HISTORY AND SEVERANCE AGREEMENT**

14.     Kachmer began his employment with Manitowoc in or around March 2007.

15.     Effective April 3, 2013, Kachmer's employment with Manitowoc was severed.

16.     At the time his employment with Manitowoc ended on April 3, 2013, Kachmer held the positions of Senior Vice President of Manitowoc and President of FSG.

17.     On or about April 23, 2013, in the City of Manitowoc, located in Manitowoc County, Wisconsin, Kachmer and Manitowoc entered into a written Severance Agreement and Release. A true and correct copy of the Agreement into which Kachmer and Manitowoc entered is attached hereto as Exhibit A.

18.     Paragraph No. 6 of Kachmer's Severance Agreement contains Non-Disclosure of Confidential Information obligations by which Kachmer agreed to be bound in exchange for the consideration he received as set forth in Paragraph Nos. 2 and 3 of the Agreement.

19.     Under Paragraph No. 6 of his Severance Agreement, Kachmer agreed, in relevant part, that:

> [Kachmer] agrees that a duty to protect the Company's (and its affiliates') confidential information is imposed upon [Kachmer] by law…. In addition, and without limiting the duties imposed by law, [Kachmer] agrees for the two (2) years following [Kachmer's] termination of employment not to disclose to a third party or use, directly or indirectly, any confidential information of the Company, except as required by law or with the express written consent of the Company.

20.     Under Paragraph No. 6 of Kachmer's Severance Agreement, "confidential information" is defined as including, but not limited to, the following:

> [T]rade secrets, design documents, copyright material, inventions, technology, processes, marketing data, business strategies, financial information and records, product information (including, without limitation, any product designs, specifications, capabilities, drawings, diagrams, blueprints, models and similar items), customer and prospective customer lists, supplier and vendor lists, product pricing formulas, personnel-related information including employee compensation information, software and similar information, in any form (whether oral, electronic, written, graphic or other printed form or obtained from access to or observation of the Company's (and/or any affiliates') facilities or operations), which is not generally known by or readily available to the public at the time of disclosure.

21.     Paragraph No. 8 of Kachmer's Severance Agreement contains certain Post-Employment Restrictions by which Kachmer agreed to be bound in exchange for the consideration he received at set forth in Paragraph Nos. 2 and 3 of the Agreement.

22.     Under Paragraph No. 8(c) of his Severance Agreement, Kachmer agreed that:

[F]or a period of two (2) years following the Termination Date, [Kachmer] will not interfere with or attempt to impair the relationship between the Company and any of its employees by attempting, directly or indirectly, to solicit, entice, or otherwise induce any employee to terminate his/her association with the Company to accept employment with any entity with which [Kachmer] is an employee, officer, agent, independent contractor, consultant, and/or representative (the "Entity"). For purposes of this subparagraph, Entity shall include any affiliates of the Entity.

23.     Under Paragraph No. 8(c), "solicit, entice or induce" is defined as including, but not limited to, the following:

(i) [I]nitiating communications with an employee of the Company relating to possible employment with the Entity; (ii) offering bonuses or additional compensation to encourage employees of the Company to terminate their employment to accept employment with the Entity; (iii) referring employees of the Company to personnel or agents employed or engaged by the Entity; or (iv) referring personnel or agents employed or engaged by the Entity to employees of the Company.

24.     Under Paragraph No. 2 of his Severance Agreement, Kachmer acknowledged that in consideration for the execution of the Agreement, compliance with the terms of the Agreement, including the restrictions contained in Paragraph Nos. 6 and 8(c), and waiver of the legal rights set forth in the Agreement, Kachmer would receive, among other things: (a) the gross sum of Four Hundred Eighty-Five Thousand Dollars ($485,000.00), broken down into biweekly payments of Eighteen Thousand Six Hundred Fifty-Three Dollars and 85 Cents ($18,653.85), unless and until Kachmer received a new position of employment, at which time the biweekly payments would be reduced by the amount of compensation earned by Kachmer from his new employer up to and through the completion of the twenty-six (26) two-week severance period; (b) a lump sum payment for unearned 2013 vacation allowance; and (c) outplacement services for a period of twelve (12) months after separation.

25.     Under Paragraph No. 3 of his Severance Agreement, Kachmer also received certain additional restricted stock units and equity compensation vesting credits and/or benefits in exchange for his execution of the Agreement and thus compliance with the terms contained therein, including the restrictions contained in Paragraph Nos. 6 and 8(c).

26.     Paragraph No. 4 of Kachmer's Severance Agreement states, in relevant part, as follows:

> Employee acknowledges that Employee's right to any benefit of payment authorized under this Agreement is conditioned upon: (a) Employee's execution of the Agreement; (b) Employee not revoking the Agreement as described in Paragraph 17 of the Agreement; and (c) Employee's compliance with all obligations ascribed to Employee under this Agreement.

27.     The conclusion of Paragraph No. 8 of Kachmer's Severance Agreement states as follows:

> Employee agrees that any breach of any aspect of this paragraph will entitle the Company to any and all relief provided for under Paragraph 9, including immediate cessation of any severance payments and benefits under this Agreement and the return of any severance payments previously made to Employee.

28.     Paragraph No. 9 of Kachmer's Severance Agreement states as follows:

> Employee acknowledges that an irreparable injury will result to the Company and its business in the event of a breach of any of the covenants or obligations of Employee contained in this Agreement. Employee also acknowledges and agrees that the damages or injuries which the Company may sustain as a result of such a breach are difficult to ascertain and money damages alone would not be an adequate remedy to the Company. Employee therefore agrees that if a controversy arises concerning the rights or obligations of a party under this Agreement or Employee breaches any of the covenants or obligations contained in this Agreement, the Company shall be entitled to any injunctive, or other, relief necessary to enforce, prevent or restrain any violation of the provisions of this Agreement (without posting a bond or other security). Such relief, however, shall be cumulative and non-exclusive and shall be in addition to any other right or remedy to which the Company may be entitled. Employee also agrees that any breach by Employee of Employee's obligations enumerated in this Agreement shall entitle the Company to the return of any severance payment or any other benefit paid, or received by Employee, hereunder, and reimbursement of any and

all attorneys fees incurred in enforcing this Agreement or taking action against Employee for breach of this Agreement.

29.     Paragraph No. 19 of Kachmer's Severance Agreement contains the following choice of law clause: "The parties agree that the construction and interpretation of this Agreement shall be governed by the laws of the State of Wisconsin."

30.     In addition to the information defined as "confidential" in Paragraph No. 6 of Kachmer's Severance Agreement, Kachmer also had an obligation to ensure the non-disclosure of, and to abstain from improper and/or unauthorized use of, Manitowoc's proprietary information. "Proprietary information" is information developed by or for Manitowoc, which is used by Manitowoc, but does not rise to the level of "confidential information" as defined in Paragraph No. 6 of Kachmer's Severance Agreement. Proprietary information includes, but is not limited to, policies, operating manuals, forms, spreadsheets, slides, Power Point presentations, graphs, templates, and other items used internally by Manitowoc. Proprietary information is that which was developed, created, and/or modified on Manitowoc work time and/or at Manitowoc's expense and, as such, has value and constitutes Company property. Such property is therefore not entitled to use, possession by, and/or access by any third parties and/or non-Manitowoc employees.

### MANITOWOC'S OBLIGATIONS UNDER KACHMER'S AGREEMENT

31.     Pursuant to Paragraph No. 2(a) of Kachmer's Agreement, Manitowoc began making the required severance payments to Kachmer on or around April 13, 2013.

32.     Manitowoc paid a total amount of $442,096.25 in severance pay to Kachmer under his Agreement before he obtained a new position of employment.

33.     On or around March 10, 2014, Kachmer began his employment with Fischbein LLC ("Fischbein") and/or Duravant. Upon information and belief, Fischbein has its headquarters

in North Carolina and Duravant has its headquarters in Illinois, but, Kachmer works in DuPage County, Illinois.

34.     In compliance with Paragraph No. 2(a) of his Severance Agreement, Kachmer informed Manitowoc of his new employment, which then triggered reduction in the amount of the continuing payments by Manitowoc by the amount Kachmer was to be paid by Fischbein.

35.     Despite the provision described in Paragraph Nos. 24 and. 34, *supra*, Kachmer requested that Manitowoc continue to make full payments to him for the remainder of the severance period contained in the Agreement, with the agreement that Kachmer would reimburse Manitowoc for these additional funds paid to him by the Company after the severance period ended.

36.     On or around March 10, 2014, Manitowoc granted Kachmer's request as described in Paragraph No. 35, *supra*, based on Kachmer's agreement to reimburse Manitowoc for those additional funds. All other provisions of Kachmer's Severance Agreement remained unaltered and in full force and effect.

37.     Manitowoc paid a total amount of $42,903.85 in additional severance pay to Kachmer, pursuant to the parties' repayment agreement as described in Paragraph Nos. 32 through 34, *supra*. Kachmer was not entitled to these payments under his Severance Agreement and was obligated to repay said amount to Manitowoc pursuant to the repayment agreement described in Paragraph Nos. 34 through 36, *supra*.

38.     Pursuant to Paragraph No. 2(c) of Kachmer's Severance Agreement, on or around May 11, 2013, Manitowoc paid Kachmer a lump sum of $27,980.77 for his unearned 2013 vacation allowance.

39.     Pursuant to Paragraph No. 2(d) of Kachmer's Severance Agreement, Manitowoc provided outplacement services to Kachmer during the severance period, costing the Company a total of $20,000.

40.     Pursuant to Paragraph No. 3 of Kachmer's Severance Agreement, Manitowoc provided Kachmer additional restricted stock units and equity compensation vesting benefits and/or options. Specifically, on or around January 23, 2014, Manitowoc transferred to Kachmer 10,040 shares of Manitowoc stock that he would not have otherwise received, valued at $256,522 at the time of the transfer. Additionally, Manitowoc provided Kachmer extra vesting benefits and/or options that he would not have been able to exercise when he did, but for the extra right provided under the Agreement, valued at $4,157,626.62 at the time(s) Kachmer exercised said options on or about certain dates between January 28, 2014, and March 18, 2014.

41.     Based on the additional amounts Manitowoc paid Kachmer under his Severance Agreement as described in Paragraph Nos. 31 through 40, *supra*, Manitowoc was obligated to expend $79,035.51 in employment and payroll taxes that it would not have incurred but for the extra benefits that Kachmer received under his Severance Agreement.

## KACHMER'S IMPROPER CONDUCT AND CONTRACTUAL BREACHES

42.     Despite Manitowoc's fulfillment of all its obligations under Kachmer's Severance Agreement, and Kachmer's receipt of all the benefits and consideration as described in Paragraph Nos. 31 through 41, *supra*, Kachmer took affirmative steps following his separation from employment with Manitowoc to violate Paragraph No. 8(c) of the Agreement, misappropriate Manitowoc's confidential and/or proprietary information, breach his fiduciary duties to Manitowoc, tortiously interfere with Manitowoc's contracts with other employees, and incur an unjust benefit based on his aforementioned wrongful conduct.

43.     Upon leaving Manitowoc, continuing through the present date, Kachmer has interfered with and/or impaired the relationship between Manitowoc and its employees by attempting, directly or indirectly, to solicit, entice, or otherwise induce, as that phrase is defined in Paragraph 8(c) of Kachmer's Severance Agreement, Manitowoc employees to terminate their relationship with Manitowoc and join Fischbein and/or Duravant, in violation of his contractual obligations to Manitowoc.

44.     Kachmer interfered with Manitowoc's relationships with Manitowoc employees, including but not limited to, Craig Reuther and Christopher Brisch, by, directly and/or indirectly, soliciting, enticing, or otherwise inducing them to leave their employment with Manitowoc and/or join Fischbein and/or Duravant. Due in whole or in part to this conduct by Kachmer, Reuther and Brisch terminated their employment with Manitowoc to accept employment with Fischbein and/or Duravant.

45.     Upon information and belief, Kachmer's attempts to interfere with and/or impair the relationship between Manitowoc and its employees, in violation of Paragraph No. 8(c) of the Agreement, is ongoing.

46.     Prior to leaving Manitowoc, continuing through the present date, Kachmer has knowingly misappropriated certain of Manitowoc's confidential and/or proprietary information and documents, in violation of the common law, to Manitowoc's detriment.

47.     Kachmer misappropriated information and documents including, but not limited to, certain internal and confidential and/or proprietary Manitowoc documents regarding Manitowoc's financials, formulas, processes, policies, business strategies, business structure and design, products, business operations, operating manuals, forms, spreadsheets, slides, templates, and/or other items used internally by Manitowoc.

48.     Upon information and belief, Kachmer's misappropriation of Manitowoc's confidential and/or proprietary information and documents is ongoing.

49.     Prior to leaving Manitowoc, continuing through the present date, Kachmer also breached his fiduciary duty of loyalty, good faith, and fair dealing that he owed to Manitowoc as a key employee and officer, and which extended past the termination of his employment based on his valid post-employment restrictions.

50.     To Manitowoc's detriment and inconvenience, Kachmer willfully, wantonly, and maliciously recruited Manitowoc's valuable employees and used Manitowoc's confidential and/or proprietary information and documents prior to and/or after his departure from the Company.

51.     Upon information and belief, Kachmer's illicit conduct is ongoing, insofar as he is still recruiting Manitowoc employees and utilizing the confidential and/or proprietary information he received from Manitowoc employees.

52.     Prior to leaving Manitowoc, continuing through the present date, Kachmer has tortiously interfered with certain of the contracts Manitowoc employees have with the Company, in violation of the common law.

53.     During the relevant time period, Manitowoc had valid, enforceable contracts in place with many of its employees regarding, among other things, non-disclosure of Manitowoc's confidential and/or proprietary information. To Manitowoc's detriment, Kachmer has intentionally and without justification induced Manitowoc employees to breach their valid and enforceable contracts with Manitowoc, subsequently causing such breaches, by requesting that said employees send him various internal, confidential and/or proprietary information and

documents of Manitowoc's, in direct violation of the contractual non-disclosure obligations Kachmer knew said individuals had with regard to Manitowoc.

54.     Upon information and belief, Kachmer's tortious interference with the contracts of Manitowoc employees is ongoing.

55.     Kachmer has received an unjust benefit from his wrongful conduct detailed in Paragraph Nos. 42 through 54, *supra*, which was to Manitowoc's direct detriment. Kachmer's benefit and Manitowoc's corresponding detriment is ongoing.

## FACTS – REUTHER

### REUTHER'S EMPLOYMENT HISTORY AND POST-EMPLOYMENT RESTRICTION AGREEMENTS

56.     Reuther began his employment with Manitowoc on or around April 17, 2002.

57.     On or around May 9, 2014, Reuther voluntarily severed his employment with Manitowoc to take a position with Fischbein LLC and/or Duravant, the same company at which Kachmer was and is employed.

58.     At the time his employment with Manitowoc ended on May 9, 2014, Reuther held the position of Senior Vice President of Finance for FSG Operations.

59.     On or about January 6, 2011, Reuther was promoted to the position of Senior Vice President of Finance for FSG Operations.

60.     On or about January 6, 2011, Reuther and Manitowoc entered into a written Non-Disclosure/Confidentiality Agreement as a prerequisite to Reuther's promotion. A true and correct copy of the aforementioned Agreement into which Reuther and Manitowoc entered is attached hereto as Exhibit B.

61.     Paragraph Nos. 1 and 4 of Reuther's Non-Disclosure/Confidentiality Agreement contain certain post-employment restrictions regarding non-disclosure of confidential

information by which Reuther agreed to be bound, in exchange for the consideration he received from Manitowoc through the Company promoting him to the position of Senior Vice President of Finance for FSG.

62.     Under Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, Reuther agreed, in relevant part, as follows:

> Employee agrees that a duty to protect the Company's confidential information is imposed upon Employee by law…. In addition, and without limiting the duties imposed by law, Employee agrees, for his/her period of employment with the Company and for the two (2) years following Employee's termination of employment, not to disclose to a third party or use for his/her personal benefit, directly or indirectly, any confidential information of the Company, except as required by law or with the express written consent of the Company.

63.     Under Paragraph No. 1, "confidential information" is defined as including, but not limited to, the following:

> [T]rade secrets, design documents, copyright material, inventions, technology, processes, marketing data, business strategies, financial information and records, product information (including, without limitation, any product designs, specifications, capabilities, drawings, diagrams, blueprints, models and similar items), customer and prospective customer lists, supplier and vendor lists, product pricing formulas, software and similar information, in any form (whether oral, electronic, written, graphic or other printed form or obtained from access to or observation of the Company's facilities or operations), which is not generally known by or readily available to the public at the time of disclosure.

64.     Under Paragraph No. 4 of his Non-Disclosure/Confidentiality Agreement, Reuther agreed, in relevant part, as follows:

> Upon the termination of Employee's employment with the Company, any Company property, including any of the Company's confidential information, over which Employee has any control, is in Employee's possession or which was in Employee's possession or was otherwise entrusted to Employee for use in Employee's employment must be turned over and must remain on the Company premises immediately following Employee's date of termination. Furthermore, any Company property which Employee possesses that is not on Company premises as of Employee's date of termination must be returned to the Company as soon as possible following his/her termination.

65.     Under Paragraph No. 8 of his Non-Disclosure/Confidentiality Agreement, Reuther agreed as follows:

> Employee acknowledges that an irreparable injury will result to the Company and its business in the event of a breach of any of the covenants or obligations of Employee contained in this Agreement. Employee also acknowledges and agrees that the damages or injuries which the Company may sustain as a result of such a breach are difficult to ascertain and money damages alone would not be an adequate remedy to the Company. Employee therefore agrees that if a controversy arises concerning the rights or obligations of a party under this Agreement or Employee breaches any of the covenants or obligations contained in this Agreement, the Company shall be entitled to any injunctive, or other relief necessary to enforce, prevent or restrain any violation of the provisions of this Agreement (without posting a bond or other security). Such relief, however, shall be cumulative and non-exclusive and shall be in addition to any other right or remedy to which the Company may be entitled. Employee also agrees that any breach by Employee of Employee's obligations enumerated in this Agreement shall entitle the Company to reimbursement for any and all attorneys fees incurred in enforcing this Agreement or taking action against Employee for breach of this Agreement.

66.     On or about January 6, 2011, Reuther and Manitowoc entered into a written Non-Solicitation Agreement as a prerequisite to Reuther's promotion. A true and correct copy of the aforementioned Agreement into which Reuther and Manitowoc entered is attached hereto as Exhibit C.

67.     Paragraph No. 1 of Reuther's Non-Solicitation Agreement contains certain post-employment restrictions regarding non-solicitation of Manitowoc customers and employees by which Reuther agreed to be bound, in exchange for the consideration he received from Manitowoc through the Company promoting him to the position of Senior Vice President of Finance for FSG Operations.

68.     Under Paragraph No. 1(c) of his Non-Solicitation Agreement, Reuther agreed, in relevant part, as follows:

> [F]or a period of two (2) years following the termination of his/her employment, Employee will not interfere with or attempt to impair the relationship between the

Company and any of its employees nor will Employee attempt, directly or indirectly, to solicit, entice, or otherwise induce any other employee to terminate his/her association with the Company.

69.     Under Paragraph No. 1(c), "solicit, entice or induce" is defined as including, but not limited to, the following:

(a) [I]nitiating communications with an employee of the Company relating to possible employment; (b) offering bonuses or additional compensation to encourage employees of the Company to terminate their employment and accept employment with a competitor, supplier or customer of the Company; (c) referring employees of the Company to personnel or agents employed or engaged by competitors, suppliers or customers of the Company; or (d) referring personnel or agents employed or engaged by competitors, suppliers or customers of the Company to employees of the Company.

70.     Under Paragraph No. 2 of his Non-Solicitation Agreement, Reuther agreed as follows:

Employee acknowledges that an irreparable injury will result to the Company and its business in the event of a breach of any of the covenants or obligations of Employee contained in this Agreement. Employee also acknowledges and agrees that the damages or injuries which the Company may sustain as a result of such a breach are difficult to ascertain and money damages alone would not be an adequate remedy to the Company. Employee therefore agrees that if a controversy arises concerning the rights or obligations of a party under this Agreement or Employee breaches any of the covenants or obligations contained in this Agreement, the Company shall be entitled to any injunctive, or other relief necessary to enforce, prevent or restrain any violation of the provisions of this Agreement (without posting a bond or other security). Such relief, however, shall be cumulative and non-exclusive and shall be in addition to any other right or remedy to which the Company may be entitled. Employee also agrees that any breach by Employee of Employee's obligations enumerated in this Agreement shall entitle the Company to reimbursement for any and all attorneys fees incurred in enforcing this Agreement or taking action against Employee for breach of this Agreement.

71.     Both of Reuther's Agreements contain the following choice of law clause: "The parties agree that the construction and interpretation of this Agreement shall be governed by the laws of the State of Wisconsin." *See* Exhibit B at ¶ 14; Exhibit C at ¶ 9.

72.     In addition to the information defined as "confidential" in Paragraph No. 1 of Reuther's Non-Disclosure/Confidentiality Agreement, Reuther also had an obligation to ensure the non-disclosure of, and to abstain from improper and/or unauthorized use of, Manitowoc's proprietary information. "Proprietary information" is information developed by or for Manitowoc, which is used by Manitowoc, but does not rise to the level of "confidential information" as defined in Paragraph No. 1 of Reuther's Non-Disclosure/Confidentiality Agreement. Proprietary information includes, but is not limited to, policies, operating manuals, forms, spreadsheets, slides, Power Point presentations, graphs, templates, and other items used internally by Manitowoc. Proprietary information is that which was developed, created, and/or modified on Manitowoc work time and/or at Manitowoc's expense and, as such, has value and constitutes Company property. Such property is therefore not entitled to use, possession by, and/or access by any third parties and/or non-Manitowoc employees.

### REUTHER'S IMPROPER CONDUCT AND CONTRACTUAL BREACHES

73.     Despite Manitowoc's fulfillment of all its obligations under Reuther's Non-Disclosure/Confidentiality and Non-Solicitation Agreements and/or Reuther's receipt of all the benefits and consideration associated with his promotion by Manitowoc in exchange for signing said Agreements, Reuther took affirmative steps both prior to and following his separation from employment with Manitowoc to violate Paragraph Nos. 1 and 4 of his Non-Disclosure/Confidentiality Agreement and Paragraph No. 1(c) of the Non-Solicitation Agreement, misappropriate Manitowoc's confidential and/or proprietary information, breach his fiduciary duty to Manitowoc, tortiously interfere with Manitowoc's contracts with multiple other employees, and incur an unjust benefit based on his aforementioned wrongful conduct.

74.     Prior to leaving Manitowoc, continuing through the present date, Reuther has disclosed to one or more third parties and/or used for his own, Duravant's, and/or Fischbein's benefit, directly or indirectly, confidential information of Manitowoc, as that phrase is defined in Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, in violation of his contractual obligations to Manitowoc, and thus to Manitowoc's detriment.

75.     Reuther disclosed to one or more third parties and/or used for his own, Duravant, and/or Fischbein's benefit, directly or indirectly, information including, but not limited to, certain internal and confidential Manitowoc documents regarding Manitowoc's processes, policies, business strategies, business structure and design, products, financials, and business operations.

76.     Upon information and belief, Reuther's disclosure and/or use of Manitowoc's confidential information, in violation of Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, is ongoing.

77.     At the time of his departure from Manitowoc, Reuther had Manitowoc property in his possession and/or control that he failed to return to the Company, in direct violation of his contractual obligations to Manitowoc as set forth in Paragraph No. 4 of his Non-Disclosure/Confidentiality Agreement. Such property includes, but is not limited to, the confidential documents referenced in Paragraph No. 75, *supra*, and Paragraph No. 82, below.

78.     Upon leaving Manitowoc, continuing through the present date, Reuther has interfered with and/or impaired the relationship between Manitowoc and its employees by attempting, directly or indirectly, to solicit, entice, or otherwise induce, as that phrase is defined in Paragraph 1(c) of Reuther's Non-Solicitation Agreement, Manitowoc employees to terminate

their relationship with Manitowoc and join a competitor and/or Fischbein and/or Duravant, in violation of his contractual obligations to Manitowoc.

79.     Reuther interfered with Manitowoc's relationship with Manitowoc employees, including but not limited to, Chris Brisch, by, directly and/or indirectly, soliciting, enticing, or otherwise inducing them to leave their employment with Manitowoc and/or join a competitor and/or Fischbein and/or Duravant. Due in whole or in part to this conduct by Reuther, Brisch terminated his employment with Manitowoc to ultimately accept employment with Fischbein and/or Duravant.

80.     Upon information and belief, Reuther's attempts to interfere with and/or impair the relationship between Manitowoc and its employees, in violation of Paragraph No. 1(c) of his Non-Solicitation Agreement, is ongoing.

81.     Prior to leaving Manitowoc, continuing through the present date, Reuther has knowingly misappropriated certain of Manitowoc's confidential and/or proprietary information and documents, as defined in Paragraph Nos. 63 and 72, *supra*, in violation of the common law, to Manitowoc's detriment.

82.     Reuther misappropriated information and documents including, but not limited to, certain internal and confidential and/or proprietary Manitowoc documents regarding Manitowoc's formulas, patterns, programs, methods, techniques, processes, policies, business strategies, business structure and design, products, financials, business operations, operating manuals, forms, spreadsheets, slides, Power Point presentations, graphs, templates, and other items used internally by Manitowoc.

83.     Upon information and belief, Reuther's misappropriation of Manitowoc's confidential and/or proprietary information and documents is ongoing.

84.     Prior to leaving Manitowoc, continuing through the present date, Reuther also breached his fiduciary duty of loyalty, good faith, and fair dealing that he owed to Manitowoc as a key employee and officer, and which extended past the termination of his employment based on his valid post-employment restrictions.

85.     To Manitowoc's detriment and inconvenience, while still employed with Manitowoc, Reuther willfully, wantonly, and maliciously failed to devote his full time and efforts to Manitowoc, instead planning his departure to join Fischbein and/or Duravant and corresponding intent to take Manitowoc employees and confidential and/or proprietary information and documents with him when he left. He also took, disclosed to third parties, and/or used for his, Fischbein's, and/or Duravant's benefit certain internal and confidential and/or privileged documents and/or information of Manitowoc's, including but not limited to the confidential and/or proprietary information and documents referenced in Paragraph Nos. 75 and 82, *supra*.

86.     Upon information and belief, Reuther's illicit conduct is ongoing, insofar as he is still utilizing the confidential information and/or documents he took from Manitowoc.

87.     Prior to leaving Manitowoc, continuing through the present date, Reuther has also tortiously interfered with certain of the contracts Manitowoc employees have with the Company, in violation of the common law.

88.     During the relevant time period, Manitowoc had valid, enforceable contracts in place with many of its employees regarding, among other things, non-disclosure of Manitowoc's confidential and/or proprietary information. To Manitowoc's detriment, Reuther has intentionally and without justification induced multiple Manitowoc employees to breach their valid and enforceable contracts with Manitowoc, subsequently causing such breaches, by

requesting that said employees send him various internal, confidential and/or proprietary information and documents of Manitowoc's, in direct violation of the contractual non-disclosure obligations Reuther knew said individuals had with regard to Manitowoc.

89.     Upon information and belief, Reuther's tortious interference with the contracts of Manitowoc employees is ongoing.

90.     Reuther has received an unjust benefit from his wrongful conduct detailed in Paragraph Nos. 73 through 89, *supra*, which was to Manitowoc's direct detriment. Reuther's benefit and Manitowoc's corresponding detriment is ongoing.

## FACTS – BRISCH

### BRISCH'S EMPLOYMENT HISTORY AND POST-EMPLOYMENT RESTRICTION AGREEMENT

91.     Brisch began his employment with Manitowoc on or around May 30, 2003.

92.     On or around October 17, 2014, Brisch voluntarily severed his employment with Manitowoc to take a position with Fischbein, LLC and/or Duravant, the same company at which Kachmer and Reuther were and are employed.

93.     At the time his employment with Manitowoc ended on October 17, 2014, Brisch held the position of Director of Finance II for FSG.

94.     On or about April 28, 2014, Brisch was promoted to the position of Director of Finance II for FSG.

95.     On or about April 28, 2014, Brisch and Manitowoc entered into a written Non-Disclosure/Confidentiality Agreement as a prerequisite to Brisch's promotion. A true and correct copy of the aforementioned Agreement into which Brisch and Manitowoc entered is attached hereto as Exhibit D.

96.     Paragraph No. 1 of Brisch's Non-Disclosure/Confidentiality Agreement contains certain restrictions regarding non-disclosure of confidential information by which Brisch agreed to be bound, in exchange for the consideration he received from Manitowoc through the Company promoting him to the position of Director of Finance II.

97.     Under Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, Brisch agreed that:

> Employee agrees that a duty to protect the Company's confidential information is imposed upon Employee by law…. In addition, and without limiting the duties imposed by law, Employee agrees, for his/her period of employment with the Company and for the two (2) years following Employee's termination of employment, not to disclose to a third party or use for his/her personal benefit, directly or indirectly, any confidential information of the Company, except as required by law or with the express written consent of the Company.

98.     Under Paragraph No. 1, "confidential information" is defined as including, but not limited to, the following:

> [T]rade secrets, design documents, copyright material, inventions, technology, processes, marketing data, business strategies, financial information and records, product information (including, without limitation, any product designs, specifications, capabilities, drawings, diagrams, blueprints, models and similar items), customer and prospective customer lists, supplier and vendor lists, product pricing formulas, software and similar information, in any form (whether oral, electronic, written, graphic or other printed form or obtained from access to or observation of the Company's facilities or operations), which is not generally known by or readily available to the public at the time of disclosure.

99.     Under Paragraph No. 8 of his Non-Disclosure/Confidentiality Agreement, Brisch agreed:

> Employee acknowledges that an irreparable injury will result to the Company and its business in the event of a breach of any of the covenants or obligations Employee contained in this Agreement.  Employee also acknowledges and agrees that the damages or injuries which the Company may sustain as a result of such a breach are difficult to ascertain and money damages alone would not be an adequate remedy to the Company. Employee therefore agrees that if a controversy arises concerning the rights or obligations of a party under this Agreement or Employee breaches any of the covenants or obligations contained in this

Agreement, the Company shall be entitled to any injunctive, or other relief necessary to enforce, prevent or restrain any violation of the provisions of this Agreement (without posting a bond or other security). Such relief, however, shall be cumulative and non-exclusive and shall be in addition to any other right or remedy to which the Company may be entitled. Employee also agrees that any breach by Employee of Employee's obligations enumerated in this Agreement shall entitle the Company to reimbursement for any and all attorneys fees incurred in enforcing this Agreement or taking action against Employee for breach of this Agreement.

100.     Paragraph No. 14 of Brisch's Non-Disclosure/Confidentiality Agreement contains the following choice of law clause: "The parties agree that the construction and interpretation of this Agreement shall be governed by the laws of the State of Wisconsin."

101.     In addition to the information defined as "confidential" in Paragraph No. 1 of Brisch's Agreement, Brisch also had an obligation to ensure the non-disclosure of, and to abstain from improper and/or unauthorized use of, Manitowoc's proprietary information. "Proprietary information" is information developed by or for Manitowoc, which is used by Manitowoc, but does not rise to the level of "confidential information" as defined in Paragraph No. 1 of Brisch's Agreement. Proprietary information includes, but is not limited to, policies, operating manuals, forms, spreadsheets, slides, Power Point presentations, graphs, templates, and other items used internally by Manitowoc. Proprietary information is that which was developed, created, and/or modified on Manitowoc work time and/or at Manitowoc's expense and, as such, has value and constitutes Company property. Such property is therefore not entitled to use, possession by, and/or access by any third parties and/or non-Manitowoc employees.

**BRISCH'S IMPROPER CONDUCT AND CONTRACTUAL BREACHES**

102.     Despite Manitowoc's fulfillment of all its obligations under Brisch's Non-Disclosure/Confidentiality Agreement and/or Brisch's receipt of all the benefits and consideration associated with his promotion by Manitowoc in exchange for signing the Non-

Disclosure/Confidentiality Agreement, Brisch took affirmative steps during his employment and following his separation from employment with Manitowoc to violate Paragraph No. 1 of the Non-Disclosure/Confidentiality Agreement, misappropriate Manitowoc's confidential and/or proprietary information, breach his fiduciary duty to Manitowoc, tortiously interfere with Manitowoc's contracts with other employees, and incur an unjust benefit based on his aforementioned wrongful conduct.

103.    Prior to leaving Manitowoc, and continuing through the present date, Brisch has disclosed to one or more third parties and/or used for his own, Duravant's, and/or Fischbein's benefit, directly or indirectly, confidential information of Manitowoc, as that phrase is defined in Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, in violation of his contractual obligations to Manitowoc, and thus to Manitowoc's detriment.

104.    Brisch disclosed to one or more third parties and/or used for his own, Duravant, and/or Fischbein's benefit, directly or indirectly, information including, but not limited to, certain internal and confidential Manitowoc documents regarding Manitowoc's processes, policies, business strategies, business structure and design, products, financials, and business operations.

105.    Upon information and belief, Brisch's disclosure and/or use of Manitowoc's confidential information, in violation of Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, is ongoing.

106.    Prior to leaving Manitowoc, continuing through the present date, Brisch has knowingly misappropriated certain of Manitowoc's confidential and/or proprietary information and documents, as defined in Paragraph Nos. 98 and 101, *supra*, in violation of the common law, to Manitowoc's detriment.

24

107. Brisch misappropriated information and documents including, but not limited to, certain internal and confidential and/or proprietary Manitowoc documents regarding Manitowoc's formulas, patterns, programs, methods, techniques, processes, policies, business strategies, business structure and design, products, financials, business operations, operating manuals, forms, spreadsheets, slides, Power Point presentations, graphs, templates, and other items used internally by Manitowoc.

108. Upon information and belief, Brisch's misappropriation of Manitowoc's confidential and/or proprietary information and documents is ongoing.

109. Prior to leaving Manitowoc, Brisch also breached his fiduciary duty of loyalty, good faith, and fair dealing that he owed to Manitowoc as a key employee and officer.

110. To Manitowoc's detriment and inconvenience, while still employed with Manitowoc, Brisch willfully, wantonly, and maliciously failed to devote his full time and efforts to Manitowoc, instead planning his departure to join Fischbein and/or Duravant and corresponding intent to take confidential and/or proprietary information and documents with him when he left. He also took, disclosed to third parties, and/or used for his, Fischbein's, and/or Duravant's benefit certain internal and confidential and/or proprietary documents and/or information of Manitowoc's, including but not limited to the confidential and/or proprietary information and documents referenced in Paragraph Nos. 104 and 107, *supra*.

111. Upon information and belief, Brisch's illicit conduct is ongoing, insofar as he is still utilizing the confidential and/or proprietary information he took from Manitowoc.

112. Prior to leaving Manitowoc, continuing through the present date, Brisch has also totiously interfered with certain of the contract(s) Manitowoc employees have with the Company, in violation of the common law.

113. During the relevant time period, Manitowoc had valid, enforceable contracts in place with many of its employees regarding, among other things, non-disclosure of Manitowoc's confidential and/or proprietary information. To Manitowoc's detriment, Brisch has intentionally and without justification induced Manitowoc employees to breach their valid and enforceable contracts with Manitowoc, subsequently causing such breaches, by requesting that said employees send him various internal, confidential and/or proprietary information and documents of Manitowoc's, in direct violation of the contractual non-disclosure obligations Brisch knew said individuals had with regard to Manitowoc.

114. Upon information and belief, Brisch's tortious interference with the contracts of Manitowoc employees is ongoing.

115. Brisch has received an unjust benefit from his wrongful conduct detailed in Paragraph Nos. 102 through 114, *supra*, which was to Manitowoc's direct detriment. Brisch's benefit and Manitowoc's corresponding detriment is ongoing.

## COUNT I

**BREACH OF CONTRACT (NON-SOLICITATION) AGAINST KACHMER**

116. Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 115, *supra*.

117. Manitowoc and Kachmer entered into their Severance Agreement on or around April 23, 2013.

118. Manitowoc has a legitimate business interest in protecting its business relationships with its existing employees, and preventing the loss of intellectual capital based on any interference with said relationships, including by any former employees. Kachmer's Severance Agreement is narrowly tailored and reasonably necessary to protect Manitowoc's

legitimate business interest in maintaining its business relationships with its existing employees and the intellectual capital they possess.

119.     Kachmer's Severance Agreement is a valid and enforceable contract between Manitowoc and Kachmer, and is supported by ample consideration, as fully set forth both herein as well as in Exhibit A.

120.     Manitowoc fully performed every obligation it owed to Kachmer under his Severance Agreement, and performed all conditions precedent on its part under the terms of the Agreement.

121.     Kachmer failed to fulfill his obligations under his Severance Agreement, in that he has interfered with and impaired the relationship between Manitowoc and its employees by soliciting, enticing, or otherwise inducing, as that phrase is defined in Paragraph 8(c) of the Agreement, Manitowoc employees, including but not limited to Reuther and Brisch, to terminate their relationships with Manitowoc and accept employment with Fischbein and/or Duravant, where Kachmer is currently employed. Upon information and belief, Kachmer's violations of his Agreement are ongoing.

122.     Kachmer's conduct as described in Paragraph No. 121, *supra*, was conducted in direct violation of Paragraph No. 8(c) of the Agreement.

123.     Manitowoc has suffered damages as a result of Kachmer's breaches of Paragraph No. 8(c) of his Severance Agreement, based on Manitowoc's payments to and/or on behalf of Kachmer for severance, unearned vacation, outplacement services, restricted stock units, equity compensation vesting credits and/or benefits, and attorneys' fees and costs pursuant to Paragraph Nos. 2(a), 2(c), 2(d), 3, 4, 8, and 9 of the Agreement.

124.     Manitowoc has also suffered damages as a result of the losses associated with Reuther and Brisch terminating their employment with Manitowoc to join Kachmer at Fischbein and/or Duravant, including but not limited to, loss of the solicited employees' intellectual capital, the replacement costs associated with filling the solicited employees' positions, and all damages and/or losses stemming from the unlawful and/or illicit conduct in which the solicited employees engaged prior to and after their departures from Manitowoc.

**COUNT II**

**BREACH OF CONTRACT (NON-DISCLOSURE) AGAINST REUTHER**

125.     Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 124, *supra*.

126.     Manitowoc and Reuther entered into their Non-Disclosure/Confidentiality Agreement on or around January 6, 2011, as a prerequisite to Manitowoc's promotion of Reuther.

127.     Manitowoc has a legitimate business interest in protecting its confidential and/or proprietary business information and documents from disclosure to third parties and/or unauthorized use by any other entities and/or individuals, including current and/or former employees. Reuther's Non-Disclosure/Confidentiality Agreement is narrowly tailored and reasonably necessary to protect Manitowoc's legitimate business interest in maintaining and protecting the integrity and non-disclosure of its confidential information. Manitowoc has taken reasonable steps to safeguard and protect its confidential information from disclosure to the general public.

28

128.    Reuther's Non-Disclosure/Confidentiality Agreement is a valid and enforceable contract between Manitowoc and Reuther, and is supported by ample consideration, as fully set forth both herein as well as in Exhibit B.

129.    Manitowoc fully performed every obligation it owed to Reuther under his Non-Disclosure/Confidentiality Agreement, and/or Reuther received all the benefits and consideration associated with his promotion by Manitowoc in exchange for signing the Non-Disclosure/Confidentiality Agreement and agreeing to be bound by the terms contained therein.

130.    Reuther failed to fulfill his obligations under his Non-Disclosure/Confidentiality Agreement, in that he has disclosed to one or more third parties and/or used for his own, Duravant's, and/or Fischbein's benefit, directly or indirectly, confidential information of Manitowoc's, as that phrase is defined in Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement. Such documents include, but are not limited to, certain confidential internal Manitowoc documents regarding Manitowoc's confidential processes, policies, business strategies, business structure and design, financials, and business operations, in violation of his contractual obligations to Manitowoc. Upon information and belief, Reuther's violations of his Non-Disclosure/Confidentiality Agreement are ongoing.

131.    Reuther also failed to fulfill his obligations under his Non-Disclosure/Confidentiality Agreement, in that he failed to return to Manitowoc certain of the Company's property that he had in his possession and control at the time of his resignation and departure from the Company, as required by Paragraph No. 4 of the Non-Disclosure/Confidentiality Agreement, including but not limited to certain confidential, internal Manitowoc documents.

132.     Reuther's conduct as described in Paragraph Nos. 130 and 131, *supra*, were conducted in direct violation of Paragraph Nos. 1 and 4 of Reuther's Non-Disclosure/Confidentiality Agreement, respectively.

133.     Manitowoc has suffered damages as a result of Reuther's breaches of Paragraph Nos. 1 and 4 of his Non-Disclosure/Confidentiality Agreement, including but not limited to the loss of the Company's valuable confidential information and/or documents disclosed to a third party and/or improperly used by Reuther, and attorneys' fees and costs pursuant to Paragraph No. 8 of the Agreement.

## COUNT III

### BREACH OF CONTRACT (NON-SOLICITATION) AGAINST REUTHER

134.     Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 133, *supra*.

135.     Manitowoc and Reuther entered into their Non-Solicitation Agreement on or around January 6, 2011, as a prerequisite to Manitowoc's promotion of Reuther.

136.     Manitowoc has a legitimate business interest in protecting its business relationships with its existing employees, and preventing the loss of intellectual capital based on any interference with said relationships, including by any former employees. Reuther's Non-Solicitation Agreement is narrowly tailored and reasonably necessary to protect Manitowoc's legitimate business interest in maintaining its business relationships with its existing employees and the intellectual capital they possess.

137.     Reuther's Non-Solicitation Agreement is a valid and enforceable contract between Manitowoc and Reuther, and is supported by ample consideration, as fully set forth both herein as well as in Exhibit C.

138.     Manitowoc fully performed every obligation it owed to Reuther under his Non-Solicitation Agreement, and/or Reuther received all the benefits and consideration associated with his promotion by Manitowoc in exchange for signing the Agreement.

139.     Reuther failed to fulfill his obligations under his Non-Solicitation Agreement, in that he has interfered with and impaired the relationship between Manitowoc and its employees by soliciting, enticing, and/or otherwise inducing, as that phrase is defined in Paragraph 1(c) of the Agreement, Manitowoc employees, including but not limited to Brisch, to terminate their relationships with Manitowoc and accept employment with a competitor and/or Fischbein and/or Duravant, where Reuther is currently employed. Upon information and belief, Reuther's violations of his Non-Solicitation Agreement are ongoing.

140.     Reuther's conduct as described in Paragraph No. 139, *supra*, was conducted in direct violation of Paragraph No. 1(c) of his Non-Solicitation Agreement.

141.     Manitowoc has suffered damages as a result of Reuther's breaches of Paragraph No. 1(c) of his Non-Solicitation Agreement, including but not limited to attorneys' fees and costs pursuant to Paragraph No. 2 of the Agreement.

142.     Manitowoc has also suffered damages as a result of the losses associated with Brisch terminating his employment with Manitowoc to join Reuther at Fischbein and/or Duravant, including but not limited to, loss of Brisch's intellectual capital, the replacement costs associated with filling Brisch's positions, and all damages and/or losses stemming from the unlawful and/or illicit conduct in which Brisch engaged prior to and after his departure from Manitowoc.

## COUNT IV

**BREACH OF CONTRACT (NON-DISCLOSURE) AGAINST BRISCH**

143.    Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 142, *supra*.

144.    Manitowoc and Brisch entered into their Non-Disclosure/Confidentiality Agreement on or around April 28, 2014, as a prerequisite to Manitowoc's promotion of Brisch.

145.    Manitowoc has a legitimate business interest in protecting its confidential and/or proprietary business information and documents from disclosure to third parties and/or unauthorized use by any other entities and/or individuals, including current and/or former employees. Brisch's Non-Disclosure/Confidentiality Agreement is narrowly tailored and reasonably necessary to protect Manitowoc's legitimate business interest in maintaining and protecting the integrity and non-disclosure of its confidential information. Manitowoc has taken reasonable steps to safeguard its confidential information from disclosure to the general public.

146.    Brisch's Non-Disclosure/Confidentiality Agreement is a valid and enforceable contract between Manitowoc and Brisch, and is supported by ample consideration, as fully set forth both herein as well as in Exhibit D.

147.    Manitowoc fully performed every obligation it owed to Brisch under his Non-Disclosure/Confidentiality Agreement and/or Brisch received all the benefits and consideration associated with his promotion by Manitowoc in exchange for signing the Agreement and agreeing to be bound by the terms contained therein.

148.    Brisch failed to fulfill his obligations under his Non-Disclosure/Confidentiality Agreement, in that he has disclosed to one or more third parties and/or used for his own, Duravant's, and/or Fischbein's benefit, directly or indirectly, confidential information of

Manitowoc's, as that phrase is defined in Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement. Such documents include, but are not limited to, certain confidential internal Manitowoc documents regarding Manitowoc's confidential processes, policies, business strategies, business structure and design, financials, and business operations, in violation of his contractual obligations to Manitowoc. Upon information and belief, Brisch's violations of his Non-Disclosure/Confidentiality Agreement are ongoing.

149. Brisch's conduct as described in Paragraph No. 148, *supra*, was conducted in direct violation of Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement.

150. Manitowoc has suffered damages as a result of Brisch's breaches of Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, including but not limited to the loss of the Company's valuable confidential information and/or documents disclosed to a third party and/or improperly used by Brisch, and attorneys' fees and costs pursuant to Paragraph No. 8 of the Agreement.

## <u>COUNT V</u>

**MISAPPROPRIATION OF CONFIDENTIAL AND/OR PROPRIETARY INFORMATION AGAINST ALL DEFENDANTS**

151. Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 150, *supra*.

152. To Manitowoc's detriment, Defendants have knowingly and deliberately misappropriated Manitowoc's confidential and/or proprietary information and/or documents, including but not limited to, certain internal and confidential and/or proprietary Manitowoc documents regarding the Company's formulas, patterns, programs, methods, techniques, processes, policies, business strategies, business structure and design, products, financials, business operations, operating manuals, forms, spreadsheets, slides, Power Point presentations,

graphs, templates, and other items used internally by Manitowoc. Upon information and belief, Defendants' misappropriation of Manitowoc's confidential and/or proprietary information is ongoing.

153.     Manitowoc has suffered damages as a result of Defendants' misappropriation of Manitowoc's confidential and/or proprietary information, including but not limited to Manitowoc's actual loss caused by the misappropriation.

## COUNT VI

### BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

154.     Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 153, *supra*.

155.     As the Senior Vice President of Manitowoc and President of FSG, Senior Vice President of Finance for FSG, and Director of Finance II or FSG, Kachmer, Reuther, and Brisch were, respectively, under a fiduciary duty of loyalty, good faith and fair dealing in their conduct towards and with regard to Manitowoc. Based on Defendants' valid post-employment restrictions, Defendants' fiduciary duties extended beyond their respective terminations of employment.

156.     Defendants' fiduciary duties towards and with regard to Manitowoc imposed upon Defendants a legal obligation to, among other things, keep privileged information confidential, refrain from taking self-interested opportunities, refrain from exploiting or using their position and insider status for personal gain or benefit, refrain from recruiting Manitowoc's employees, and ensure Manitowoc's property and proprietary information remained Manitowoc's property and in Manitowoc's exclusive possession.

157.    To Manitowoc's detriment, prior to leaving Manitowoc, Reuther and Brisch formulated their plans to leave Manitowoc to join a competitor and/or Fischbein and/or Duravant and take Manitowoc's confidential and/or proprietary information and/or documents with them, instead of devoting their full time and efforts to Manitowoc, to Manitowoc's detriment and inconvenience. Moreover, prior to leaving Manitowoc and continuing through the present date, Defendants have recruited Manitowoc's employees and taken, disclosed to third parties, misappropriated, and/or used for their own, Duravant's, and/or Fischbein's benefit certain confidential and/or proprietary information and documents regarding and/or belonging to Manitowoc, as part of Defendants' scheme to join and build up their new employer, Fischbein and/or Duravant.

158.    Defendants' conduct as described in Paragraph No. 157, *supra*, was conducted in direct violation of their fiduciary duties, as imposed by law, to keep privileged information confidential, refrain from taking self-interested opportunities, refrain from exploiting or using their position at Manitowoc and information and contacts gained in conjunction therewith for their personal gain or benefit, refrain from recruiting Manitowoc's employees, and ensure Manitowoc's property and proprietary information remained Manitowoc's property and in Manitowoc's exclusive possession.

159.    Manitowoc has suffered injury and damage as a result of Defendants' breaches of their fiduciary duties of loyalty, good faith and fair dealing to Manitowoc, including but not limited to loss of the employees recruited away by Kachmer and Reuther and all corresponding costs, loss of the value of the compensation the Company paid to Reuther and Brisch during the period in which they were breaching their duty of loyalty to Manitowoc, and loss of Manitowoc's confidentiality and/or proprietary information.

160.   Manitowoc is also entitled to punitive damages based on Defendants' breaches of their fiduciary duties, based on Defendants' willful, wanton, and/or malicious conduct in this regard.

## COUNT VII

### UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

161.   Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 160, *supra*.

162.   Prior to leaving Manitowoc and continuing through the present date, Defendants formulated their plan to build up Fischbein and/or Duravant with Manitowoc employees and confidential and/or proprietary information and documents; have taken, disclosed, misappropriated, and/or used for their own, for Duravant's, and/or for Fischbein's benefit certain proprietary and/or confidential information and/or documents regarding and/or belonging to Manitowoc, to Manitowoc's detriment, loss, and inconvenience; and have caused at least two Manitowoc employees to sever their employment with Manitowoc to work at Fischbein and/or Duravant.

163.   Defendants received an unjust benefit from their wrongful conduct as described in Paragraph No. 162, *supra*, and said benefit was to Manitowoc's direct detriment, loss, and/or inconvenience. Defendants' retention of the benefits they received violates the fundamental principles of justice, equity, and good conscience.

164.   Manitowoc has suffered injury and damages as a result of Defendants' conduct, including but not limited to the value of the benefits conferred on Defendants.

## COUNT VIII

### TORTIOUS INTERFERENCE WITH CONTRACT(S)
### AGAINST ALL DEFENDANTS

165.    Manitowoc realleges and incorporates by reference the allegations set forth in Paragraph Nos. 1 through 164, *supra*.

166.    During the relevant time period, Manitowoc had valid, enforceable contracts with many of its employees regarding non-disclosure of Manitowoc's confidential and/or proprietary information.

167.    Defendants were aware of Manitowoc's contractual relationships with its employees regarding non-disclosure of the Company's confidential and/or proprietary information, as referenced in Paragraph No. 166, *supra*.

168.    Defendants intentionally and without justification induced certain of Manitowoc's employees to breach their contracts with Manitowoc, by requesting said individuals send them confidential and/or proprietary information and documents of Manitowoc's. Defendants' inducements caused actual breaches of said individuals' contracts, to Manitowoc's detriment.

169.    Manitowoc has suffered injury and damages as a result of Defendants' tortious interference with the contracts Manitowoc had in place with certain of its employees, including but not limited to lost profits and the value of the benefits obtained by Defendants, and the losses associated with the unauthorized and wrongful disclosure and/or use of Manitowoc's confidential and/or proprietary information.

170.    Manitowoc is also entitled to punitive damages based on Defendants' tortious interference with Manitowoc's contractual relationships with its employees, based on Defendants' fraudulent, malicious, willful, and/or grossly negligent conduct in this regard.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, The Manitowoc Company, Inc., hereby respectfully prays for judgment against Defendants, Michael J. Kachmer, Craig Reuther, and Christopher Brisch, as follows:

1.      Enjoining Kachmer from continuing to breach his obligations under Paragraph No. 8(c) of his Severance Agreement, and ordering Kachmer to specifically perform his contractual obligations thereunder for the remainder of the term specified in Paragraph No. 8(c), pursuant to Paragraph No. 9 of Kachmer's Agreement.

2.      Enjoining Reuther from continuing to breach his obligations under Paragraph No. 1(c) of his Non-Solicitation Agreement and Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, and ordering Reuther to specifically perform his contractual obligations thereunder for the remainder of the term specified in Paragraph Nos. 1(c) and 1, pursuant to Paragraph Nos. 2 and 8 of Reuther's Agreements, respectively.

3.      Enjoining Brisch from continuing to breach his obligations under Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, and ordering Brisch to specifically perform his contractual obligations thereunder for the remainder of the term specified in Paragraph No. 1, pursuant to Paragraph No. 8 of Brisch's Agreement.

4.      Enjoining all Defendants from continuing to misappropriate Manitowoc's confidential and/or proprietary information and documents.

5.      Enjoining all Defendants from continuing to breach their fiduciary duties to Manitowoc.

6.      Enjoining all Defendants from continuing to incur unjust benefits from their wrongful conduct.

38

7.     Enjoining Defendants from continuing to tortiously interfere with Manitowoc's contractual relationships with its employees.

8.     Requiring Defendants to return to Manitowoc any and all property and/or confidential or proprietary information and documents of Manitowoc's in their possession or control.

9.     Entering a monetary judgment in favor of Manitowoc and against Kachmer for his breaches of Paragraph No. 8(c) of his Severance Agreement, misappropriation of Manitowoc's confidential and/or proprietary information and documents, breaches of his fiduciary duty to Manitowoc, unjust benefit he received from his wrongful conduct, and tortious interference with Manitowoc's contractual relationships with its employees, in an amount to be proven at trial including, but not limited to, the following:

  a.     $442,096.25 for severance pay, pursuant to Paragraph Nos. 2(a), 4, 8, and 9 of Kachmer's Severance Agreement;

  b.     $27,980.77 for unearned 2013 vacation pay, pursuant to Paragraph Nos. 2(c), 4, 8, and 9 of Kachmer's Severance Agreement;

  c.     $20,000 for outplacement service costs, pursuant to Paragraph Nos. 4, 8, and 9 of Kachmer's Severance Agreement;

  d.     Return of the additional 10,040 units of restricted stock transferred to Kachmer; and/or payment of the $256,522 value Kachmer received for said units, or their current value, if higher, pursuant to Paragraph Nos. 3, 4, and 9 of Kachmer's Severance Agreement;

  e.     Rescission of all additional equity compensation vesting benefits, exercise period modifications, and other rights provided to Kachmer under his

Severance Agreement; and/or return of all stock that Kachmer obtained pursuant to such modifications made under his Severance Agreement; and/or payment of the $4,157,526.62 value Kachmer received for exercising said options, or their current value, if higher, pursuant to Paragraph Nos. 3, 4, and 9 of Kachmer's Severance Agreement;

f. $79,035.15 for additional taxes paid on the amounts above;

g. The losses associated with Reuther and Brisch terminating their employment with Manitowoc, including the costs associated with replacing them, loss of their intellectual capital, and all damages and/or losses stemming from the unlawful and/or illicit conduct in which Reuther and Brisch engaged prior to and after their departures from Manitowoc;

h. The losses associated with the unauthorized and wrongful disclosure and/or use of Manitowoc's confidential and/or proprietary information;

i. The losses associated with Kachmer's misappropriation of Manitowoc's confidential and/or proprietary information and documents;

j. The losses associated with Kachmer's breaches of his fiduciary duties;

k. The value of the benefits conferred on Kachmer stemming from his wrongful conduct; and

l. The losses associated with Kachmer's tortious interference with Manitowoc's contractual relationships with its employees, including but not limited to the losses associated with the replacement of the five employees terminated, in part, because of the conduct in which they engaged as related to and a result of Kachmer's inducements.

10.     Entering a monetary judgment in favor of Manitowoc and against Reuther for his breaches of Paragraph No. 1(c) of his Non-Solicitation Agreement, breaches of Paragraph Nos. 1 and 4 of his Non-Disclosure/Confidentiality Agreement, misappropriation of Manitowoc's confidential and/or proprietary information and documents, breaches of his fiduciary duty to Manitowoc, unjust benefit he received from his wrongful conduct, and tortious interference with Manitowoc's contractual relationships with its employees, in an amount to be proven at trial including, but not limited to, the following:

a.     The losses associated with Brisch terminating his employment with Manitowoc, including the costs associated with replacing Brisch, loss of his intellectual capital, and all damages and/or losses stemming from the unlawful and/or illicit conduct in which Brisch engaged prior to and after his departures from Manitowoc;

b.     The losses associated with the unauthorized and wrongful disclosure and/or use of Manitowoc's confidential and/or proprietary information;

c.     The losses associated with Reuther's misappropriation of Manitowoc's confidential and/or proprietary information and documents;

d.     The losses associated with Reuther's breaches of his fiduciary duties;

e.     The value of the benefits conferred on Reuther stemming from his wrongful conduct; and

f.     The losses associated with Reuther's tortious interference with Manitowoc's contractual relationships with its employees, including but not limited to the losses associated with the replacement of the five

employees terminated, in part, because of the conduct in which they engaged as related to and a result of Reuther's inducements.

11.     Entering a monetary judgment in favor of Manitowoc and against Brisch for his breaches of Paragraph No. 1 of his Non-Disclosure/Confidentiality Agreement, misappropriation of Manitowoc's confidential and/or proprietary information and documents, breaches of his fiduciary duty to Manitowoc, unjust benefit he received from his wrongful conduct, and tortious interference with Manitowoc's contractual relationships with its employees, in an amount to be proven at trial including, but not limited to, the following:

a.      The losses associated with the unauthorized and wrongful disclosure and/or use of Manitowoc's confidential and/or proprietary information;

b.      The losses associated with Brisch's misappropriation of Manitowoc's confidential and/or proprietary information and documents;

c.      The losses associated with Brisch's breaches of his fiduciary duties;

d.      The value of the benefits conferred on Brisch stemming from his wrongful conduct; and

e.      The losses associated with Brisch's tortious interference with Manitowoc's contractual relationships with its employees, including but not limited to the losses associated with the replacement of the five employees terminated, in part, because of the conduct in which they engaged as related to and a result of Brisch's inducements.

12.     Awarding Manitowoc punitive damages based on Defendants' tortious interference with Manitowoc's contractual relationships with its employees, based on Defendants' fraudulent, malicious, willful, and/or grossly negligent conduct in this regard, as

well as based on Defendants' breaches of their fiduciary duties to Manitowoc, based on Defendants' willful, wanton, and/or malicious conduct in this regard, in an amount to be proven at trial.

13.     Awarding Manitowoc any and all attorneys' fees, costs, and expenses incurred in this litigation, pursuant to Paragraph No. 9 of Kachmer's Severance Agreement, Paragraph Nos. 2 and 8 of Reuther's Non-Solicitation and Non-Disclosure/Confidentiality Agreements, respectively, and Paragraph No. 8 of Brisch's Non-Disclosure/Confidentiality Agreement.

14.     Awarding Manitowoc such other and further relief as the Court may consider proper.

Dated this 14th day of December, 2015.

Respectfully Submitted,

BUELOW VETTER BUIKEMA OLSON & VLIET, LLC

_____/s/ Joel S. Aziere_____
Joel S. Aziere (WI Bar No. 1030823)
jaziere@buelowvetter.com
Suzanne M. Glisch (WI Bar No. 1079803)
sglisch@buelowvetter.com
Buelow Vetter Buikema Olson & Vliet, LLC
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Telephone: (262) 364-0300
Facsimile: (262) 364-0320

*Attorneys for The Manitowoc Company, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on December 14, 2015, he served a copy of the above and foregoing **Consolidated Complaint** on the following via the Court's electronic filing system:

> Michael R. Levinson
> mlevinson@seyfarth.com
> Robyn E. Marsh
> rmarsh@seyfarth.com
> Seyfarth Shaw LLP
> 131 South Dearborn Street, Suite 2400
> Chicago, IL 60603

Dated this 14th day of December, 2015.

Respectfully Submitted,

BUELOW VETTER BUIKEMA OLSON &
VLIET, LLC

_____/s/ Joel S. Aziere_____
Joel S. Aziere (WI Bar No. 1030823)
jaziere@buelowvetter.com
Suzanne M. Glisch (WI Bar No. 1079803)
sglisch@buelowvetter.com
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Telephone: (262) 364-0300
Facsimile: (262) 364-0320

*Attorneys for The Manitowoc Company, Inc.*