IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE MANITOWOC COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 14 C 09271 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| MICHAEL J. KACHMER, et al., | ) | Magistrate Judge M. David Weisman |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff The Manitowoc Company, Inc. ("Manitowoc") has sued Defendants Michael J. Kachmer ("Kachmer"), Craig Reuther ("Reuther"), and Christopher Brisch ("Brisch") (collectively, "Defendants") for breach of contract. Manitowoc asserts that Defendants breached their post-employment, non-solicitation and/or non-disclosure obligations contained within various agreements agreed to by the parties. As a result of Defendants' conduct, Manitowoc alleges that it lost employees and valuable confidential and/or proprietary information and documents and incurred costs associated therewith. The case is before this Court on Manitowoc's motion to compel the production of a spreadsheet generated by Reuther (the "Reuther Spreadsheet") allegedly containing information regarding the misappropriated documents at issue in this litigation.[1] For the reasons set forth below, the Court denies Manitowoc's motion to compel [dkt. 133].

---

[1] Manitowoc directs its motion to compel to all named defendants and seeks its relief cloaked in the same collective terms. (*See, e.g.,* Dkt. 133, p. 1 (moving the Court to compel "Defendants, Michael J. Kachmer, Craig Reuther, and Christopher Brisch (collectively, 'Defendants') to produce [the Reuther Spreadsheet]") and Dkt. 135, p. 15 (requesting "an order compelling *Defendants* to produce the Reuther Spreadsheet" (emphasis added).) For their part, Defendants respond as a single unitary interest. (*See, e.g.,* Dkt. 140, p. 12 ("*Defendants* request that this Honorable Court deny Manitowc's motion to compel ….") (emphasis added).) Obviously Manitowoc cannot seek the production of records a defendant does not possess, nor can it compel one defendant to answer an interrogatory

## Background

Manitowoc seeks discovery of the Reuther Spreadsheet, a document Reuther prepared at the specific direction of his counsel and in direct response to the onset of this litigation. (Dkt. 140, pp. 2, 10.) Reuther provided the Reuther Spreadsheet to this Court for *in camera* review. As set forth in further detail below, the document has 35 rows (one for each document it addresses) and five columns. The columns bucket information by (1) document number; (2) the title of each document; (3) a description of each document; (4) the nature, if any, of Reuther's use of each document; and (5) Reuther's theory of why each document was not confidential.

At issue is the information sought by Interrogatory Nos. 10, 11, and 12. Manitowoc asserts that Reuther has failed or refused to produce substantive information in discovery responses "regarding the Manitowoc documents he took, sent, requested, received, misappropriated, used, and/or had in his possession, and what he did with each such document." (Dkt. 135, p. 1.) Specifically, Manitowoc hones in on Interrogatory Nos. 10, 11, and 12, which it believes cover the entire universe of allegedly misappropriated documents that form the basis of this lawsuit. (Dkt. 135, p. 2-6; dkt. 141, p. 4 (asserting that Interrogatory Nos. 10, 11, and 12 collectively address the entire universe of documents Reuther may have misappropriated).) Manitowoc argues that "the Reuther Spreadsheet is the only comprehensive source containing *all* the information Manitowoc requested." (Dkt. 141, p. 4-5.)

Understandably, Manitowoc is keenly interested in the contents of the Reuther Spreadsheet. The Court's review of the document, however, reveals that certain portions are

---

on behalf of a different defendant. We therefore presume the parties' respective use of "defendants" was simply an oversight and treat Manitowoc's motion to compel as directed solely to Reuther, and not to Kachmer or Brisch. Likewise, we treat Defendants' Response In Opposition to Manitowoc's Motion to Compel, (Dkt. 140), as a defense solely on Reuther's behalf. Should any party find this approach erroneous, the Court invites it to promptly file a pleading further elaborating on its objection.

privileged as attorney-client communications and other portions constitute the party's work product. Accordingly, the privileged portions and aspects protected under the work product doctrine are shielded from discovery.

Reuther argued in his submissions, (*see, e.g.,* dkt. 140, pp. 2, 9) and at oral argument, that he produced any non-privileged information in his responses to Manitowoc's interrogatories and other discovery. The Court agrees and therefore does not require Reuther to produce the unprivileged duplicative information and finds no compelling need that would justify the production of the otherwise protected information. *See Jackson v. City of Chi.*, No. 03 C 8289, 2006 WL 2224052, at *4 (N.D. Ill. July 31, 2006) (distinguishing between fact and opinion work product and explaining "a party may obtain discovery of ordinary work product only upon a showing of substantial need for the work product and proof of undue hardship if forced to obtain the requested work product in some other way.") (citing *Logan v. Comm. Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996)).

Manitowoc correctly asserts that Reuther may not shroud from discovery otherwise discoverable information by simply inserting such information in a communication to counsel. The parties' briefs, oral argument, and, in particular, the Court's *in camera* review of the Reuther Spreadsheet reveal that Reuther has not sought to protect from disclosure underlying facts at issue in the litigation. To the contrary, Reuther indeed already produced (albeit in a different form) the information Manitowoc doggedly seeks. The Court finds that Reuther has produced all discoverable facts contained within the Reuther Spreadsheet, and Reuther only seeks to protect his own work product (prepared subsequent to Manitowoc's initiation of this lawsuit) and communications made in confidence to counsel in relation to the pending litigation. In sum,

Manitowoc has already received all of the discovery to which it is entitled, and the Court therefore denies Manitowoc's Motion to Compel for the reasons stated herein.

## Discussion

**A.     Timing of the Motion to Compel**

The Court first addresses the timeliness of Manitowoc's motion to compel. Reuther argues that Manitowoc inexcusably delayed in filing its motion to compel and the Court should outright deny the motion as untimely. (Dkt. 140, pp. 10-11.) The district court set the close of fact discovery for April 6, 2016. (Dkt. 120.) Expert discovery closed on June 24, 2016. (*See* dkt. 101 (setting June 24, 2016 due date for deposition of rebuttal experts).) Manitowoc filed this motion to compel on July 12, 2016. (Dkt. 133.)

Reuther points to this District's decision in *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, No. 05 C6022, 2007 WL 1673563, at *3 (N.D. Ill. June 8, 2007) (motions to compel filed after the close of discovery not untimely where accompanied by reasonable and persuasive justification for delay) and the Seventh Circuit's opinion in *Rossetto v. Pabst Brewing Company Co.,* 217 F.3d 539, 542 (7th Cir. 2000) (upholding denial of untimely motion to compel filed two months after close of discovery without justification for tardiness). Despite fact discovery closing prior to the filing of the motion to compel, (*see* Dkt. 120 (setting close of fact discovery for April 6, 2016)), Manitowoc persuasively distinguishes this case from other contexts in which a motion to compel filed late in the game might upend the case's briefing schedule, place an undue burden on the opposing party, or force the Court to reopen discovery. (*See* dkt. 141, pp. 9-10.) Unlike *Rossetto*, the Court, in exercising its discretion, finds no need to deny the motion on timeliness grounds to "expedite the litigation and spare the parties the expense of protracted discovery, the bane of modern litigation." 217 F.3d 539 at 542. Rather, the Court agrees that this

motion implicates a discrete and manageable question of production that directly bears on the heart of the litigation, and by resolving the issue on the merits, we further the truth-seeking function of the litigation. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) ("Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court.") (internal citation omitted).

The Court also notes Manitowoc's assertion that Reuther failed to disclose the existence of the Reuther Spreadsheet in a timely fashion. (Dkt. 141, p. 2.) Manitowoc took Reuther's deposition on January 26, 2016, at which time Manitowoc's counsel specifically demanded the Reuther Spreadsheet. (*Id.* at 2-3.; dkt. 135, p. 5.) Reuther's counsel responded by submitting a privilege log for the Reuther Spreadsheet on February 1, 2016. (Dkt. 140, Ex. A; *see* dkt. 135, p. 5.) Under these circumstances, we believe all parties acted reasonably in both requesting the Reuther Spreadsheet and subsequently responding to that request.

**B.    Nature of the Reuther Spreadsheet and Initial Observations**

The Reuther Spreadsheet bears no title beyond "Attorney Client Privilege." It contains five categories of information pertaining to 35 documents at issue in the litigation. The five categories of information are set forth in columns entitled (1) "No."; (2) "Document Title"; (3) "Document Description"; (4) "How did I use it"; and (5) "Why [sic] felt it was not confidential information."

The titles are self-explanatory. The first category provides nothing more than a list numbering the documents 1-35, and the second category only provides a document title. The "Document Description" column sets out a brief overview of the background and nature of the

5

document, the purpose for which Manitowoc used the document and, in some cases, a notation of the individual or company that created the document (or type of document), and that the document was superseded. Next, the "How did I use it" category describes the nature of Reuther's use of the document (if any). Finally, the "Why [sic] felt it was not confidential information" category sets forth, as one might imagine, Reuther's theory for why the documents should not be considered confidential.

The Court has subject matter jurisdiction on the basis of diversity of the parties. It is well settled that Federal Rule of Civil Procedure 26(b)(3) codifies the work product doctrine, and the Court applies federal law to issues implicating the doctrine.[2] EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 804 (American Bar Association, eds., 5th ed., Vol II. 2007); *Abbott Labs v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 405 (N.D. Ill. 2001) ("Claims of privilege under the attorney work product doctrine are . . . governed solely by federal law.").

Conversely, Federal Rule of Evidence 501 commands that "state law governs privilege regarding a claim . . . for which state law supplies the rule of decision." Because federal jurisdiction exists based on diversity of the parties, state law supplies the controlling law. Both parties brief the issue applying Illinois law as controlling, so we likewise apply Illinois law. (*See, e.g.,* dkt. 135, pp. 8-10 (citing federal and Illinois case law and setting forth the Seventh Circuit and Illinois state court test for analyzing attorney-client privilege); dkt. 140, pp. 7-9

---

[2] Perhaps the well-settled nature of this issue suggested to the parties that any discussion of the issue was unnecessary.

(citing federal and Illinois case law and defining attorney-client privilege pursuant to Illinois law).) [3]

## C. Attorney-Client Privilege and Work Product Determination

Not surprisingly, the parties have starkly divergent views as to whether the Reuther Spreadsheet is privileged. Manitowoc, on the one hand, asserts that the Reuther Spreadsheet is not subject to the attorney-client privilege, nor does it garner protection as "attorney work product." (Dkt. 135, p. 10.) [4] Reuther, on the other hand, predictably opposes both assertions, claiming both attorney-client privilege and work product protection. (Dkt. 140, pp. 7-9, 9-10.)

### *1. Attorney-Client Privilege*

Manitowoc argues that the Reuther Spreadsheet "is *not* a communication between Reuther and his counsel and therefore does not even fall within the potential purview of the attorney-client privilege." (Dkt. 135, p. 9 (emphasis in original).) Understandably, Manitowoc operates at a knowledge deficit due to its inability to review the document in question. Manitowoc correctly presumes that portions of the spreadsheet do not contain communications as defined for purposes of attorney-client privilege. Rather, certain columns of the Reuther Spreadsheet merely summarize factual information. *See, e.g., Lexecon, Inc. v. Milberg Weiss Bershad Specthrie & Lerach*, No. 92 C 7768, 1993 WL 179789, at *7, n. 2 (N.D. Ill. May 24, 1993) ("Defendants may be arguing simply that any communications from one lawyer to another concerning the case or from a lawyer to a client are privileged. If so, they are in error . . . . If a communication by a client is not revealed by a document, then the document is not protected by the attorney-client privilege") (internal citations omitted); *Heriot v. Byrne*, 257 F.R.D. 645, 656

---

[3] The agreements at issue as they pertain to Reuther provide that Wisconsin law will govern. (Dkt. 73, Ex. B ¶ 14, Ex. C ¶ 9.) Despite this declaration, Manitowoc, presumably the drafter of the agreement, cites to Illinois law. Reuther follows suit. Thus, we, too, will apply Illinois law.
[4] As set forth in further detail *infra*, Manitowoc uses the nomenclature "attorney work product," a misnomer that leads it astray in its argument.

(N.D. Ill. 2009) ("Of course, not all communications between the attorney and the client are privileged. The privilege adheres 'only if [the communications] constitute legal advice, or tend to directly or indirectly reveal the substance of a client confidence.'") (internal citations and quotation marks omitted); *Allen v. Chi. Transit Auth.*, 198 F.R.D. 495, 499 (N.D. Ill. 2001) ("Not all information transmitted to an attorney becomes cloaked with the privilege . . . . In the end, [] the question is: does the document in question reveal, directly or indirectly, the substance of a confidential attorney-client communication.") (citing *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983) and *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 28 (N.D. Ill.1980)).

Two categories of the Reuther Spreadsheet, however, clearly contain attorney-client communications.[5] The columns entitled "How did I use it" and "Why [sic] felt it was not confidential information" straightforwardly evince communications from Reuther to counsel narrating information for the purpose of obtaining legal advice. Accordingly, the privilege bars Manitowoc from viewing the last two columns of the spreadsheet.

Though prohibited from obtaining the Reuther Spreadsheet, Manitowoc may gather the underlying factual information via another means. The Supreme Court held in *Upjohn v. U.S.*:

---

[5] Manitowoc argues "[a]s a threshold matter, the Reuther spreadsheet is *not* a communication between Reuther and his counsel." (Dkt. 135, p. 9.) Manitowoc looks to *Cangelosi v. Capasso*, 851 N.E.2d 954, 957-58 (Ill. App. 2006) for support. *Cangelosi* is unavailing as it involves notes prepared by a litigant before a lawsuit had been filed and before an attorney-client relationship was in existence. *Id.* at 955, 958 (stating the notes were authored within a day of the events, prior to any litigation, and were not turned over to an attorney for 22 months and therefore concluding the notes were primarily factual statements and not directed to an attorney). The instant case presents diametrically opposite conditions as to the litigation's timing and existence of attorney-client relationship. Reuther generated the document after Manitowoc filed suit and at the specific instruction of retained counsel. Additionally, we note that the form of communication to counsel is not controlling in determining whether the information conveyed is a "communication." *See, e.g.*, *Midwesco-Paschen Joint Venture for Viking Projects v. Imo Indus., Inc.,* 638 N.E.2d 322, 329 (Ill. App. 1994) (handwritten note to counsel considered protected communication); *see also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 431 (N.D. Ill. 2006), *supplemented*, 432 F. Supp. 2d 794 (N.D. Ill. 2006) ("The achievement of [the goal of the attorney-client privilege] obviously is not a function of the form either the client's communications or the lawyer's responses may take. As the Supreme Court has said in another context, '[i]t is the substance of what they do, and not the form in which they clothe their transactions, which must afford the test.'") (alteration in original) (internal citation omitted).

> [T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say to your attorney?,' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

449 U.S. 383, 395-96 (1981) (*citing Phila. v. Westinghouse Ele. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)) (emphasis in original). Indeed, Manitowoc's Interrogatory No. 15 appears to discern this information. (*See* dkt. 140, Ex. C (containing Interrogatory No. 15, listing the documents contained in the Reuther Spreadsheet, asking whether Reuther knew of contractual nondisclosure obligations of employees from whom he requested documents, and seeking purpose for which Reuther requested and used documents).) Reuther appears to have fully answered Interrogatory No. 15.

In its reply, Manitowoc argues that "Defendants erroneously assert that their discovery burden has been fulfilled through incomplete responses to other, irrelevant Interrogatories and/or Requests for Production of documents not at issue herein." (Dkt. 141, p. 3.) Manitowoc specifically challenges Reuther's position that "the Spreadsheet is not the only source containing the information Manitowoc seeks" and, in particular, objects to Reuther's argument that Interrogatory No. 15 identifies 35 confidential documents and answers why he requested the documents and the purpose for which he used the documents. (*Id.*) Understandably, Manitowoc questions whether Interrogatory No. 15 addresses the entire universe of documents set forth in the Reuther Spreadsheet because that interrogatory "does not ask about the entire universe of documents Reuther may have misappropriated." (*Id.* at 4 (stating Defendants themselves point out Interrogatory No. 15 asks about *only* 35 specific documents and Interrogatory Nos. 10, 11, and 12 collectively ask about the entire universe of documents Reuther may have misappropriated)) (emphasis added). The Court's review of the Reuther Spreadsheet shows that

9

the documents listed 1-35 in Interrogatory No. 15 mirror identically the 35 documents housed within the Reuther Spreadsheet and, in fact, are even presented in the same order.[6] Reuther additionally addresses each of the 35 documents in his response to Interrogatory No. 15 or other interrogatory responses attached as an exhibit to Reuther's response brief.[7]

Thus, Reuther objects to producing the spreadsheet but does not attempt to conceal from disclosure underlying factual information by the cloak of privilege. To do so would raise wholly different concerns. *See Upjohn Co.,* 449 U.S. 383 at 395 ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney . . . ."). For these reasons, we find that the two columns entitled "How did I use it," and "Why [sic] felt it was not confidential information" are attorney-client communications entitled to privilege protection.

2. *Work Product Doctrine*

The columns entitled "Document Title" and "Document Description" expectedly contain the names of the documents and their corresponding descriptions. In his deposition, Reuther accurately states the Reuther Spreadsheet's purpose was "Just to lay out all of the documents that

---

[6] The wording is not literally identical, but the differences are so minute that the document titles in Interrogatory No. 15 and the Reuther Spreadsheet obviously refer to the same documents. In order to be abundantly clear that Reuther has not unlawfully shielded information, the following discrepancies exist between the documents as listed by Manitowoc's interrogatory and as listed by the Reuther Spreadsheet: (11) "FSG Operations' April 2014 financial information, including sales, profits, and earnings" versus "FSG Operations' April 2014 financial information"; (16) Manitowoc Foodservice Operating Policy for Outside Consultants and Contractors – Global" versus "Manitowoc Foodservice Operating Policy for Outside Consultants"; (23) "Appendix 2 to Manitowoc Operating Policy 29 Restructuring Activities – Reserve Roll Forward" versus "Appendix 2 to Manitowoc Operating Policy 28 Restructuring Activities – Roll Forward" (Reuther's response to Interrogatory No. 15 indicates that "28" is a typographical error and should be "29"); and (35) "Plant Controller Job Posting" versus "Plan Controller Job Posting" (from the interrogatory response, it appears that "Plant" is a typographical error and should be "Plan"). This list ignores the following discrepancies: capitalization, punctuation, pluralization, and possessive use of "Manitowoc." (*See* dkt. 140, Ex. C, p. 3.)

[7] An analysis of Interrogatory No. 15 suffices to show Manitowoc has received in discovery the factual contents within the Reuther Spreadsheet with the exception that Reuther's response does not refer to "(13) Manitowoc Foodservice 2015 Business Plan Review." In his response to Interrogatory No. 23, however, Reuther addresses that document asserting that the document is not confidential, and that he understood the Manitowoc employees who sent this (and other) documents to have authority to do so. (Dkt. 140, Ex. C, p. 12-13.) Finally, the Court points out that interrogatories other than No. 15 further address documents within the spreadsheet. (*See, generally,* Dkt. 140, Ex. C.)

I had received that were included in the complaint against me" and explain "What I used them for." (Dkt. 140, Ex. B, p. 6, Reuther Dep. Trans. 14:9-13.) Reuther further affirms that the spreadsheet contained all of the documents that came into his possession—everything contained in the amended complaint. (Dkt. 140, Ex. B, p. 7, Reuther Dep. Trans. 15:3-6.)

Manitowoc's legal arguments against Reuther's assertion of work product protection erroneously commingle dated case law with more current statutory references. Federal Rule of Civil Procedure 26(b)(3)(A) codifies the doctrine and extends work product protection to "documents and tangible things that are prepared in anticipation of litigation or for trial *by* or for *another party* or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." (emphasis added). On its face, the Rule clearly includes within its scope documents prepared by *a party*. Yet, Manitowoc, in its briefing and at oral argument, asserts that work product protection only reaches the work product of counsel. (*See, e.g.,* dkt. 135, p. 10 (Stating "[t]he work product doctrine is intended to protect *an attorney's* written materials and mental impressions" and calling the doctrine the "attorney work product doctrine") (emphasis added); *id.* at 11 ("Reuther's counsel did not draft the Spreadsheet, and it therefore simply cannot contain any of counsel's mental impressions.").) Manitowoc's limitation of the work product doctrine to attorneys only fatally undermines its position.[8]

Protection afforded by the work product doctrine extends to documents prepared by a party irrespective of the absence of counsel's involvement in the documents' generation. *In re Bank One Sec. Litig., First Chi. S'holder Claims*, 209 F.R.D. 418, 425 (N.D. Ill. 2002) ("The

---

[8] Manitowoc's brief suffers from internal inconsistency and therefore by its terms concedes its limitation of the doctrine to attorney work product is improper. For example, in other instances, Manitowoc correctly states that "[the work product doctrine] protects documents prepared by or for a party." (Dkt. 135, p. 10.) Further, despite the erroneous nomenclature, "attorney work product doctrine," Manitowoc goes on to state that the core of the doctrine "is to protect 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or *other representative* concerning the litigation." (Dkt. 135, p. 10. (citing Fed. R. Civ. P. 26(b)(3)(B)) (emphasis added).

work-product doctrine extends beyond the attorney to documents prepared by a party's representative or agent.") (internal citation omitted). "The test to determine whether materials were prepared in anticipation of litigation is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (citing *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1119 (7th Cir. 1983)). Here, no doubt exists as to whether Reuther can meet this test. Reuther constructed the spreadsheet both at the specific instruction of counsel and in direct response to Manitowoc filing suit against him. (Dkt. 140, p. 10; *see also id.* Ex. B, p. 6-7, Reuther Dep. Trans. 14:6-25, 15:1-9.) The Court's *in camera* review of the document's contents corroborates Reuther's briefing and attached deposition testimony.

Significantly, as we understand the issue, Reuther does *not* argue that he may withhold otherwise discoverable underlying factual information. Rather, he seeks exclusively to protect the Reuther Spreadsheet from production. *See Jumper v. Yellow Corp.*, 176 F.R.D. 282, 287 (N.D. Ill. 1997) ("It is well established that the work product doctrine does not protect discovery of the underlying facts of a dispute."); *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003) ("Although documents and tangibles created by the representative in anticipation on [sic] litigation are protected, the underlying facts may be subject to disclosure in ordinary discovery if they are non-privileged."); *see also Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023 (7th Cir. 2012) (rejecting argument that factual material underlying the document is not protected because Rule 26 "protects *all* 'documents and tangible things that are prepared in advance of litigation.'") (emphasis in original).

For these reasons, the "Document Description" category containing Reuther's personally generated overviews of the documents (and aggregation and organization thereof) is entitled to

work product protection.⁹ We note that the "Document Title" column arguably may not obtain protection, but Reuther already provided all of these titles in his answers to Manitowoc's interrogatories. Reuther need not duplicate that production. Accordingly, the entirety of the Reuther Spreadsheet is shielded from production.

**D.     Extraordinary Relief Pursuant to Federal Rule of Civil Procedure 26**

Manitowoc argues that even if the spreadsheet is entitled to work product protection, it would "suffer undue hardship to obtain the substantial equivalent of the materials by other means," and therefore, this Court should order production. (Dkt.135, p. 11 (citing Fed. R. Civ. P. 26(b)(3)(A)).) We disagree. As set forth above, Manitowoc received the full scope of the information to which it is entitled. This information is contained in defendant's answer to Interrogatory No. 15 and other interrogatories. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (work product doctrine limits circumstances in which attorneys may piggyback on the fact-finding investigation of their counterparts); *Appleton Papers, Inc.*, 702 F.3d 1018 at 1024-25 (work product doctrine "advances the adversarial system by providing incentives to collect information and thoroughly prepare for litigation); *see also supra,* n. 6 (detailing minor differences between spreadsheet and Interrogatory No. 15). Manitowoc cites to no supporting law for its "substantial need" argument pursuant to Federal Rule Civil Procedure 26(b)(3)(A). (*See* Dkt. 135, pp. 11-13.) Considering all of the circumstances presented here, we are confident that Manitowoc is not entitled to the Reuther spreadsheet because it has failed to demonstrate a substantial need for the same.¹⁰ *See Netherlands Ins. Co. v. Nat'l Cas.*, 283

---

⁹ The categories of the Reuther Spreadsheet evaluated in the Court's attorney-client privilege analysis above are not addressed by this section because the Court deems them subject to the more robust protection of the attorney-client privilege. The lack of inclusion should in no way be construed as meaning that those categories could not obtain work product protection if a reviewing court did not find them privileged attorney-client communications.

¹⁰ We note that Rule 26's "substantial need" exception applies to work product protected material. Any "substantial need" argument that might apply to the portions of the Reuther spreadsheet that contain attorney-client communications would be governed by state law. Again, Manitowoc presents no case law that would support its

F.R.D. 412, 419 (C.D. Ill. 2012) (substantial need for privileged material not established because information obtainable by other means); *United States v. Dish Network, LLC,* 283 F.R.D. 420, 427 (C.D. Ill. 2012) (moving party failed to establish "undue hardship" under Rule 26 when moving party had obtained "substantially equivalent material by other means").

### E. Waiver of Protection

Finally, Manitowoc creatively argues that Reuther waived any protection afforded the spreadsheet by using it to refresh his memory prior to the deposition. Manitowoc correctly asserts that the use of a privileged document to refresh a witness's recollection can lead to the waiver of both work product and attorney-client communication. Federal Rule of Evidence 612 controls this blended evidentiary and discovery issue and applies to depositions via Federal Rule of Civil Procedure 30(c). *Timm v. Mead Corp.*, No. 91 C 5648, 1992 WL 32280, at *4 (N.D. Ill. Feb. 7, 1992). Crucially, however, Rule 612 relies heavily on the Court's discretion in determining whether to order a party to produce otherwise privileged documents. *United States E.E.O.C. v. Continental Airlines*, 395 F. Supp. 2d 738, 744 (N.D. Ill. 2005) (discussing courts' *considerable* discretion in deciding whether a writing must be produced when a witness reviews a document prior to testifying) (emphasis added).

As a threshold matter, we observe that it is not clear that Reuther used the spreadsheet to refresh his recollection in the manner Federal Rule of Evidence 612 contemplates that concept. While Reuther openly acknowledged that he 'reviewed' the spreadsheet prior to his deposition (*see* dkt. 135, pp. 4-5), Manitowoc makes no showing that Reuther's memory was ever exhausted such that Reuther needed the spreadsheet to "refresh" his compromised memory. *See Constand v. Cosby*, 232 F.R.D. 494, 500 (E.D. Pa. 2006) (stating that a deponent must testify in

---

argument as to the attorney-client communications. *See, e.g., Sann v. Mastrian*, 280 F.R.D. 437, 439-440 (S.D. Ind. 2011) (noting that Rule 26 applies to work product analysis while controlling state law applies to privilege issues).

her own words and explaining that a deponent refreshes her recollection when her memory is exhausted, then refers to the document, and subsequently continues her testimony in her own words based on her refreshed recollection). While Reuther does raise this issue, albeit it in somewhat tepid terms, (dkt. 140, p. 5), we do not engage in a full analysis of Rule 612's applicability in this scenario. Suffice to say, we are not confident that a witness's "review" of a document in the standard course of preparation for a deposition even implicates Rule 612. At the very least, this form of usage distinguishes it from the case law Manitowoc cites and raises sufficient ambiguity to weigh against a finding of waiver.

To resolve this matter, we also look to Rule 612's directive that disclosure of a document used to refresh a witness's memory in advance of her testimony is appropriate "if the court decides that justice requires the [requesting] party" to have the document available. Fed. R. Evid. 612(a)(2). The foregoing sections of this opinion make abundantly clear that, even absent disclosure of the Reuther Spreadsheet, Manitowoc will not suffer any inability to obtain identifying information regarding the documents that Reuther has in possession. Rather, Reuther provided this information in his answer to Interrogatory No. 15 (and answers to other interrogatories). (*See* Dkt. 140, Ex. C.) And, Manitowoc fails to identify any compelling need for the attorney-client privileged information contained in the Reuther spreadsheet. We therefore do not find that "justice requires" the production of the Reuther spreadsheet. Fed. R. Evid. 612(a)(2).

Manitowoc cites a number of cases in support of its waiver argument. (Dkt. 135, pp. 13-15.) None of these is on point. In each of the cases cited, a significant distinguishing factor renders the case inapposite. First, in *Bailey v. Meister Brau, Inc.,* the deponent used the protected documents at issue "to refresh his recollection *at* his deposition." 57 F.R.D. 11, 12

(N.D. Ill. 1972) (emphasis added). By contrast, Manitowoc never established Reuther's actual reliance on the spreadsheet to *refresh* his recollection and fails to cite any evidence suggesting that Reuther used the spreadsheet *during* the deposition for any purpose at all. Thus, the pragmatic underpinning of Rule 612—to allow effective cross-examination—is not at play here.

Manitowoc's other cited cases are equally unavailing. In *In re Fedex Ground Package Systems., Inc., Employment Practices Litigation* the deponents, like Reuther, reviewed the document at issue prior to the deposition. 2007 WL 733753, at *9 (N.D. Ind. 2007). Unlike Reuther, however, both deponents appeared to be reviewing the document at issue at the beginning of each deposition and "indicated to [the opposing party] that they had reviewed the documents prior to the commencement of the deposition *to refresh their recollection.*" *Id.* (emphasis added). The opinion then states that, when asked if the document refreshed his recollection, one of the deponents "answered an *unambiguous* 'yes.'" *Id.* (emphasis added). The *Fedex* court thus distinguished this from cases where a deponent merely glances at some documents to refresh her recollection and found disclosure appropriate pursuant to Federal Rule of Evidence 612. Accordingly, the *Fedex* case fails to support a finding of waiver.

Finally, *Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.*, 81 F.R.D. 8 (N.D. Ill. 1978) similarly fails to support Manitowoc's position. The *Wheeling* court relied heavily on the above distinguished *Bailey* case. *See id.* at 10 ("We find the [] discussion in *Bailey* concerning waiver of attorney-client privilege to be particularly germane" to this Rule 612 analysis). The *Wheeling* opinion notes (as we note above) that, in *Bailey*, the deponent waived privilege when he used the documents to refresh his recollection *at* the deposition. *Id.* (emphasis added).

16

The case is further distinguishable on policy grounds. The *Wheeling* court discussed two policy concerns: (1) the "unfair disadvantage which could be placed upon the cross-examiner by the simple expedient of using only privileged writings to refresh recollection"; and (2) the need to search out discrepancies between the writing and the testimony. *Id.* Here, Manitowoc faces no such disadvantage and needs not search out discrepancies because, as set forth above, Reuther provided the information sought in his answers to Manitowoc's interrogatories.

The timing and nonessential nature of Reuther's usage of the Reuther Spreadsheet distinguish this case from those cited in Manitowoc's submissions. Moreover, Manitowoc already received access to the information to which it is entitled. We therefore conclude that justice does not require waiver of Reuther's privilege and the production of the Reuther Spreadsheet.

## **Conclusion**

For the reasons set forth above, Reuther is not required to produce the Reuther Spreadsheet, and Manitowoc's motion to compel [dkt. 133] is denied.

**SO ORDERED.**             **ENTERED: August, 26 2016**

*M. David Weisman*
M. David Weisman
United States Magistrate Judge